1  MELINDA BIRD (SBN 102236)
   DEBORAH DORFMAN (CRLSA No. 801060)
2  DISABILITY RIGHTS CALIFORNIA
   3580 Wilshire Blvd., Ste. 902
3  Los Angeles, CA 90010
   Telephone: (213) 427-8747
4  Facsimile: (213) 427-8767
   Melinda.bird@disabilityrightsca.org
5
   *Attorneys for Named Plaintiffs and the Proposed Class*
6  *Additional Attorneys for Named Plaintiffs and the*
   *Proposed Class on Signature Page*
7
   STEPHEN P. BERZON (SBN 46540)
8  EVE H. CERVANTEZ (SBN 164709)
   STACEY M. LEYTON (SBN 203827)      **E-filing**
9  Altshuler Berzon LLP
   177 Post Street, Suite 300
10 San Francisco, California 94108
   Telephone: (415) 421-7151
11 Facsimile: (415) 362-8064
   sleyton@altshulerberzon.com
12
   *Attorneys for Plaintiffs SEIU-UHW, SEIU-ULTCW, SEIU*
13 *Local 521, SEIU California State Council, UDW, and CUHW*

14              UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
15               SAN FRANCISCO/OAKLAND DIVISION

16 V.L. by and through his *guardian ad litem* Nancy    Case No. _____ 4668
   Lagahid; DAVID OSTER; WILLIE BEATRICE
17 SHEPPARD; and C.R. by and through his *guardian*
   *ad litem* Michelle Rivera, on behalf of themselves
18 and a class of those similarly situated; SERVICE      **CLASS ACTION COMPLAINT FOR**
   EMPLOYEES INTERNATIONAL UNION                         **INJUNCTIVE AND DECLARATORY**
19 ("SEIU")–UNITED HEALTHCARE WORKERS                    **RELIEF**
   WEST; SEIU–UNITED LONG-TERM CARE
20 WORKERS; SEIU LOCAL 521; SEIU
   CALIFORNIA STATE COUNCIL; UNITED
21 DOMESTIC WORKERS OF AMERICA, AFSCME,
   LOCAL 3930, AFL-CIO; and CALIFORNIA
22 UNITED HOMECARE WORKERS,

23              Plaintiffs,
24       v.
25 JOHN A. WAGNER, Director of the California
   Department of Social Services; DAVID
26 MAXWELL-JOLLY, Director of the California
   Department of Health Care Services; CALIFORNIA
27 DEPARTMENT OF HEALTH CARE SERVICES;
   and CALIFORNIA DEPARTMENT OF SOCIAL
28 SERVICES
                Defendants.

1

**INTRODUCTION**

2    1.    This civil rights class action seeks declaratory and injunctive relief to prevent over

3  one hundred thousand low-income seniors and individuals with disabilities from losing critical

4  services that enable them to remain safely in their homes.

5    2.    California's In-Home Supportive Services ("IHSS") program presently provides

6  crucial in-home assistance with certain basic tasks of daily living – for example, bathing, dressing,

7  meal preparation and clean up, eating, bowel and bladder care, and taking necessary medications –

8  so that elderly individuals and persons with disabilities can avoid unnecessary and costly

9  institutionalization. IHSS recipients qualify for these services because it has been determined that

10  they cannot safely remain in their homes without them.

11    3.    However, ABX4 4, which was passed on an emergency basis for purely budgetary

12  reasons, would render tens of thousands of current IHSS recipients ineligible for all IHSS services

13  based on a "Functional Index Score," first devised in 1988, that was not designed to measure

14  individual need or to determine eligibility, has never been used for such purposes, and is not a

15  reasonable measure of need or eligibility. ABX4 4 (Stats. 2009, c. 4, §§ 29, 30) (Part II)

16  (amending Cal. Welf. & Inst. Code §§ 12309 & 12309.2). ABX4 4 would also deprive tens of

17  thousands of additional IHSS recipients of critical IHSS domestic and related services that have

18  previously been found necessary to permit these individuals to remain safely in their homes based

19  on a numerical "rank" that was not designed to determine eligibility, has never been used for such

20  purpose, and is not a reasonable measure of need or eligibility. These statutory changes are

21  scheduled to go into effect on November 1, 2009.

22    4.    Unless enjoined, these provisions of ABX4 4 will cause immediate and irreparable

23  harm by depriving members of the plaintiff class of services that are essential to their ability to

24  remain safely in their own homes. This will place members of the plaintiff class at imminent and

25  serious risk of harm to their health and safety, as well as of unnecessary and unwanted out-of-home

26  placement, including institutionalization.

27    5.    The statutory provisions at issue contravene federal law in a number of ways.

28  Initially, ABX4 4's changes to state law violate the Americans with Disabilities Act of 1990, 42

1

1  U.S.C. § 12312 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794
2  ("Section 504"), by placing IHSS recipients at imminent risk of unnecessary and unwanted out-of-
3  home and out-of-community placement, including in institutions such as nursing homes, and by
4  discriminating on the basis of type of disability.

5  6.  ABX4 4 also violates the requirements of Title XIX of the Social Security Act, 42
6  U.S.C. § 1396a ("the Medicaid Act"): that States provide (1) comparable Medicaid services to
7  individuals with similar needs; (2) services that are sufficient in amount, duration, and scope to
8  reasonably achieve their purposes; (3) services according to reasonable standards; and (4)
9  necessary services to correct or ameliorate children's conditions. ABX4 4 further violates the
10  requirement imposed by the Medicaid Maintenance of Effort Clause of the American Recovery and
11  Reinvestment Act ("ARRA") by restricting IHSS eligibility standards.

12  7.  Finally, Defendants' failure to provide adequate notice and opportunity for hearing
13  prior to depriving members of the plaintiff class of critical IHSS services violates the federal
14  constitutional guarantee of procedural due process and the Medicaid Act's notice and hearing
15  provisions.

16                                    **JURISDICTION**

17  8.  This action for declaratory and injunctive relief arises under the Due Process Clause
18  of the Fourteenth Amendment to the U.S. Constitution; Title XIX of the Social Security Act, 42
19  U.S.C. § 1396a *et seq.* ("the Medicaid Act"); Title II of the Americans With Disabilities Act of
20  1990, 42 U.S.C. § 12132 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794
21  ("Section 504"); 42 U.S.C. § 1983; and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

22  9.  Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. Plaintiffs' claims for
23  declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 and 2202. At all times
24  relevant to this action, Defendants have acted under color of state law.

25                                       **VENUE**

26  10.  Venue is proper in the Northern District of California pursuant to 28 U.S.C.
27  § 1391(b), because the Defendants operate and perform their official duties therein and thus reside
28  therein for purposes of venue, and because a substantial part of the events and omissions giving

                                             2

1  rise to the claims herein occurred in the Northern District of California. Individual named plaintiff

2  V.L. lives and receives services in San Francisco, which is in the Northern District of California.

3  Individual named plaintiff Willie Beatrice Sheppard lives and receives services in Emeryville,

4  which is in Alameda County, in the Northern District of California. Individual named plaintiff

5  C.R. lives and receives services in Gilroy, which is in Santa Clara County, in the Northern District

6  of California. Members of the plaintiff class reside and receive IHSS services in the Northern

7  District of California. Organizational Plaintiff Service Employees International Union-United

8  Healthcare Workers West ("UHW") members provide IHSS services in Marin and Contra Costa

9  Counties, in the Northern District of California. Organizational Plaintiff SEIU United Long-Term

10  Care Workers ("ULTCW") members provide IHSS services in Mendocino, Sonoma, Napa,

11  Alameda, Santa Cruz, and Monterey Counties, in the Northern District of California.

12  Organizational Plaintiff SEIU Local 521 ("Local 521") members provide IHSS services in Santa

13  Clara and San Mateo County, in the Northern District of California. Organizational plaintiff

14  California United Homecare Workers ("CUHW") members provide IHSS services in Del Norte,

15  Humboldt, and Lake Counties, in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

17      11.     Pursuant to Civil L. R. 3-2(c) this action should be assigned to the San Francisco or

18  Oakland Division of the Northern District of California, because a substantial part of the events and

19  omissions giving rise to the claims herein occurred in counties in the San Francisco/Oakland

20  Division. Individual named plaintiff V.L. lives in San Francisco. Individual named plaintiff Willie

21  Beatrice Sheppard lives in Emeryville, which is located in Alameda County. Many members of the

22  plaintiff class are residents of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin,

23  Mendocino, Napa, San Francisco, San Mateo, and Sonoma Counties. Organizational Plaintiff

24  UHW members provide IHSS services in Marin and Contra Costa Counties. Organizational

25  Plaintiff ULTCW members provide IHSS services in Alameda, Mendocino, Sonoma, and Napa

26  Counties. Organizational Plaintiff Local 521 members provide IHSS services in San Mateo

27  County. Organizational Plaintiff CUHW members provide IHSS services in Del Norte, Humboldt,

28  and Lake Counties.

3

1

2

## PARTIES

### Individual Plaintiffs

3      12.     Named Paintiff V.L., represented here by his *guardian ad litem* Nancy Lagahid, is a

4   14-year-old boy who has Charcot-Marie-Tooth Disease, a form of muscular dystrophy. Because of

5   his disabilities and medical condition, plaintiff V.L. is eligible for California's Medicaid program

6   ("Medi-Cal") and receives IHSS services. Pursuant to ABX4 4, V.L. will lose eligibility for all

7   IHSS services because his Functional Index Score is under 2.0.

8      13.     Named Plaintiff David Oster is a 33-year-old man who has autism and bi-polar

9   disorder. Because of his disabilities and medical conditions, Mr. Oster is Medi-Cal eligible and

10   receives IHSS services. Pursuant to ABX4 4, Mr. Oster will lose eligibility for all IHSS services

11   because his Functional Index Score is under 2.0.

12      14.     Named Plaintiff Willie Beatrice Sheppard is an 81-year-old woman whose mobility

13   is impaired as result of a stroke and arthritis. Because of her disabilities, medical conditions, and

14   age, Ms. Sheppard is Medi-Cal eligible and receives IHSS. Ms. Sheppard has never been informed

15   what her Functional Index Score is and has also never been informed what her functional ranks are

16   for domestic and related services. She is concerned that she may lose eligibility for IHSS

17   altogether if her Functional Index score is too low (below 2.0) or that she may lose some of her

18   domestic and related services if her functional ranks for these services are below 4.

19      15.     Named plaintiff C.R., represented here by his *guardian ad litem* Michelle Rivera, is

20   a five-year-old boy who has a developmental disability due to chromosome deletion. Because of

21   his disabilities and medical condition, C.R. is Medi-Cal eligible and receives IHSS services.

22   Pursuant to ABX 4 4, C.R. will lose eligibility for all IHSS services because his Functional Index

23   Score is under 2.0.

24

### Organizational Plaintiffs

25      16.     Plaintiff UHW is an unincorporated association with members that include

26   approximately 55,000 IHSS providers in 11 counties. Some members provide services for their

27   minor children. Plaintiff UHW is an affiliate of the Service Employees International Union

28   ("SEIU") and for years has been an advocate for increased access to and quality of IHSS services.

4

1  UHW brings this suit on behalf of its members who will be injured if IHSS recipients (including

2  minor children of members) lose eligibility and services, who would have standing to sue in their

3  own right, and whose personal participation in this litigation is not necessary.

4      17.    Plaintiff ULTCW is an unincorporated association with members that include

5  approximately 175,000 IHSS providers in 10 counties. Some members provide services for their

6  minor children. ULTCW has long been an advocate for increased access to and quality of IHSS

7  services. ULTCW brings this suit on behalf of its members who will be injured if IHSS recipients

8  (including minor children of members) lose eligibility and services, who would have standing to

9  sue in their own right, and whose personal participation in this litigation is not necessary.

10     18.    Plaintiff Local 521 is an unincorporated association with members that include

11  approximately 15,000 IHSS providers. Some members provide services for their minor children.

12  Local 521, through its predecessor unions, has long been an advocate for increased access to and

13  quality of IHSS services. Local 521 brings this suit on behalf of its members who will be injured if

14  IHSS recipients (including minor children of members) lose eligibility and services, who would

15  have standing to sue in their own right, and whose personal participation in this litigation is not

16  necessary.

17     19.    Plaintiff SEIU California State Council ("SEIU State Council") is a state-wide

18  affiliate of SEIU. More than 20 local unions representing over 700,000 workers and retirees

19  belong to the SEIU State Council. The SEIU State Council advocates for the interests of its

20  affiliated local unions and their members before legislative bodies, regulatory agencies, and the

21  courts, including by advocating for increased access to and quality of IHSS services. The SEIU

22  State Council brings this suit on behalf of its affiliate local unions and the members of its affiliates,

23  who would have standing to sue in their own right and whose personal participation in this

24  litigation is not necessary.

25     20.    United Domestic Workers of America, AFSCME, Local 3930, AFL-CIO ("UDW")

26  is a local union affiliated with the American Federation of State, County and Municipal Employees

27  ("AFSCME"). UDW represents approximately 55,000 IHSS providers in 11 counties throughout

28  California. Some of these members provide services for their minor children. UDW has for years

5

Class Action Complaint for Injunctive and Declaratory Relief

1 | been an advocate for increased access to and quality of IHSS services. UDW brings this suit on

2 | behalf of its members who will be injured if IHSS recipients (including minor children of

3 | members) lose eligibility and services, who would have standing to sue in their own right, and

4 | whose personal participation in this litigation is not necessary.

5 |      21.    Plaintiff CUHW is an unincorporated association with members that include

6 | approximately 18,000 IHSS providers in 18 counties. Some members provide services to their

7 | minor children. CUHW is jointly affiliated with SEIU and AFSCME, and is a member of the

8 | SEIU State Council. Through the SEIU State Council, CUHW has been an advocate for increased

9 | access to and quality of IHSS services. CUHW brings this suit on behalf of its members who will

10 | be injured if IHSS recipients (including minor children of members) lose eligibility and services,

11 | who would have standing to sue in their own right, and whose personal participation in this

12 | litigation is not necessary.

13 | **Defendants**

14 |      22.    Defendant California Department of Health Care Services ("DHCS") is a state

15 | agency that receives federal funds and is the single state agency responsible for administering the

16 | federal Medicaid program in California ("Medi-Cal"). Defendant DHCS is sued under the Third

17 | Claim for Relief (ADA) and the Fourth Claim for Relief (Section 504).

18 |      23.    Defendant David Maxwell-Jolly is the Director of DHCS, a state agency that

19 | receives federal funds. Defendant Maxwell-Jolly is a public agency director responsible for

20 | operation of a public entity, pursuant to 42 U.S.C. §§ 12131(1)(A) & (B). As the Director of

21 | DHCS, Defendant Maxwell-Jolly is responsible for oversight, supervision and control of the

22 | functions and programs vested in the DHCS, including the Medi-Cal program, and has the

23 | responsibility for ensuring that the Medi-Cal program is implemented and administered consistent

24 | with the requirements of federal Medicaid law. Defendant Maxwell-Jolly is sued in his official

25 | capacity under the First Claim for Relief (Fourteenth Amendment to the United States

26 | Constitution-Procedural Due Process), Second Claim for Relief (Medicaid- Right to Fair Hearing),

27 | Fifth Claim for Relief (Medicaid-Comparability Requirement), Sixth Claim for Relief (Medicaid-

28 | Sufficiency Requirement), Seventh Claim for Relief (Medicaid-Reasonable Standards

6

1  Requirement), Eighth Claim for Relief (Medicaid-Early and Periodic Screening, Diagnostic and

2  Treatment Services), and Ninth Claim for Relief (Medicaid-ARRA).

3  24. Defendant California Department of Social Services ("CDSS") is a state agency that

4  receives federal funds and is responsible for the overall implementation and supervision of the

5  administration of the IHSS programs by the counties. Defendant CDSS is sued under the Third

6  Claim for Relief (ADA) and the Fourth Claim for Relief (Section 504).

7  25. Defendant John Wagner is the Director of CDSS, a state agency that receives

8  federal funds. Defendant Wagner is a public agency director responsible for the operation of a

9  public entity pursuant to 42 U.S.C. §§ 12131(1)(A) & (B). Defendant Wagner is sued in his

10  official capacity under the First Claim for Relief (Fourteenth Amendment to the United States

11  Constitution-Procedural Due Process), Second Claim for Relief (Medicaid-Right to Fair Hearing),

12  Fifth Claim for Relief (Medicaid-Comparability Requirement), Sixth Claim for Relief (Medicaid-

13  Sufficiency Requirement), Seventh Claim for Relief (Medicaid-Reasonable Standards

14  Requirement), Eighth Claim for Relief (Medicaid-Early & Periodic Screening, Diagnostic and

15  Treatment Services), and Ninth Claim for Relief (Medicaid-ARRA).

16  **FACTUAL ALLEGATIONS**

17  **A.  Medi-Cal and the California IHSS Program**

18  26. The purpose of the IHSS program is "to enable the aged, blind or disabled poor to

19  avoid institutionalization by remaining in their homes with proper supportive services." Cal. Welf.

20  & Inst. Code § 12300(a).

21  27. Persons eligible for this program must be aged (65 or over), blind, or disabled, and

22  must also be poor under standards of the federal Supplemental Security Income or State

23  Supplemental Payment Program. Cal. Welf. & Inst. Code §§ 12051, 12052, 14051; CDSS Manual

24  of Policies and Procedures ("Manual" or "MPP") §§ 30-755.111-.114.

25  28. The IHSS program provides assistance with the following: (1) domestic services;

26  (2) related services (meal preparation and clean-up, restaurant meal allowance, laundry, food and

27  other shopping); (3) personal care services (bowel and bladder care, respiration, feeding, routine

28  bed baths, bathing, oral hygiene and grooming, dressing, repositioning and rubbing skin including

7

1 range of motion exercises, transfers, care and assistance with prosthetic devices and self-
2 administration of medication, routine menstrual care, skin care, and ambulation); (4) travel to
3 medical appointments; (5) yard hazard abatement; (6) protective supervision (monitoring of
4 individuals with mental impairments to ensure their safety); (7) teaching and demonstration
5 services; and (8) paramedical services (services that are prescribed by a doctor and require training,
6 such as injections, colostomy irrigation, catheter insertion/care, suctioning, G and NG tube feeding,
7 and ventilator and oxygen care). Cal. Welf. & Inst. Code §§ 12300(b) & (c); 14132.95(d)(1), (2);
8 14132.951(c).

9     29.     Most IHSS services are provided through California's Medicaid program ("Medi-
10 Cal"). Medicaid is a joint federal and state medical assistance program for certain groups of low-
11 income people, including children. *See* 42 U.S.C. §§ 1396-1396v. California has elected to
12 participate in the Medicaid program, and so must comply with the requirements of the federal
13 Medicaid Act and its implementing regulations.

14     30.     The purpose of Medicaid is to furnish, as far as practicable, "medical assistance on
15 behalf of . . . aged, blind or disabled individuals, whose income and resources are insufficient to
16 meet the costs of necessary medical services" and "to help such families and individuals to attain or
17 retain capability for independence or self-care . . . ." 42 U.S.C. § 1396.

18     31.     Participating States must designate a "single state agency" to administer the
19 Medicaid program. 42 U.S.C. § 1396a(a)(5). In California, the single state agency is DHCS.

20     32.     Participating States are reimbursed by the federal government for a portion of the
21 cost of providing Medicaid benefits. *See* 42 U.S.C. § 1396b. The remaining funding for the IHSS
22 program comes from the State and from counties.

23     **1.**     **Eligibility for IHSS Services**

24     33.     Counties, under the direction of Defendant CDSS, determine recipients' eligibility
25 for IHSS services and the number of hours authorized for any services based on statewide statutes
26 and regulations. Cal. Welf. & Inst. Code §§ 12300(g), 14132.95(f), 14132.951(b) & (e).

27     34.     Individuals are eligible for IHSS services only if they are "unable to perform the
28 services themselves and . . . cannot safely remain in their homes. . . unless these services are

8

provided." Cal. Welf. & Inst. Code § 12300(a); MPP §§ 30-761.13, 30-763.112.

35.     The assessment of eligibility for IHSS services begins with county social workers "collecting and evaluating information . . . [which] includes but is not limited to, all of the following: (A) The recipient's living environment. (B) Alternative resources. (C) The recipient's functional abilities." Cal. Welf. & Inst. Code § 12309(b).

36.     Social workers assess recipients' level of need through a variety of methods, including observing the recipient and the recipient's living environment, asking the client questions, and reviewing documentation, including diagnosis and functional indications from the recipient's physician. MPP § 30-761.26.

37.     Based on this information, social workers determine the tasks that recipients are unable to safely perform by themselves, and the minimum number of hours necessary for an IHSS provider to assist or to undertake those tasks for them. MPP § 30-763.2.

38.     Social workers are trained that providers should not do things for recipients that the recipients could do for themselves, because this results in further loss of independence for the recipient and may actually further mental or physical deterioration.

39.     When a new recipient begins receiving IHSS services, the recipient receives a Notice of Action ("NOA") setting forth the hours authorized for each service on a weekly or monthly basis. Cal. Welf. & Inst. Code § 12300.2; MPP § 30-763.81.

40.     Recipients are reassessed for eligibility for IHSS services on an annual basis through in-person social worker reassessment. Recipients are notified of any change in hours authorized in an NOA. Cal. Welf. & Inst. Code § 12300.2; MPP §§ 30-761.212, 30-763.81.

41.     Counties are also required to reassess recipients any time the recipient notifies the county of a need to adjust the supportive services hours authorized, or when there are other indications or expectations of a change in circumstances affecting the recipient's need for supportive services. Cal. Welf. & Inst. Code § 12301.1(d).

42.     As of the date this complaint is being filed, if a recipient disagrees with the number of authorized hours set forth in the NOA, he or she may file an administrative appeal. Cal. Welf. & Inst. Code § 12301.5.

9

1

## 2. Assignment of Functional Ranks

2      43.     As one part of their overall assessment, social workers assign a functional rank to

3   each of fourteen "activities of daily living and instrumental activities of daily living" ("ADLs") by

4   evaluating the combined "effect of the recipient's physical, cognitive, and emotional impairment"

5   on the recipient's performance of the tasks associated with those ADLs. Cal. Welf. & Inst. Code §

6   12309(c); MPP § 30-756.1.

7      44.     Recipients are ranked on eleven physical tasks and three mental functions. The

8   physical tasks are: housework; laundry; shopping and errands; meal preparation and cleanup;

9   mobility inside; bathing and grooming; dressing; bowel, bladder, and menstrual care; transfer;

10  eating; and respiration. Of these, housework, laundry, shopping and errands, and meal preparation

11  and cleanup correspond to so-called domestic or related services, and the remainder are referred to

12  in state regulations as "personal care" services. MPP § 30-756.2(a)-(k). Social workers also rank

13  three mental functions of recipients: memory, orientation, and judgment. MPP § 30-756.372.

14     45.     The IHSS ranking scale includes:

15     (1) Rank one. A recipient's functioning shall be classified as rank one if his or her
       functioning is independent, and he or she is able to perform the function without
16     human assistance, although the recipient may have difficulty in performing the
       function, but the completion of the function, with or without a device or mobility
17     aid, poses no substantial risk to his or her safety.

18
       (2) Rank two. A recipient's functioning shall be classified as rank two if he or she is
19     able to perform a function, but needs verbal assistance, such as reminding, guidance,
       or encouragement.
20

21     (3) Rank three. A recipient's functioning shall be classified as rank three if he or she
       can perform the function with some human assistance, including, but not limited to,
22     direct physical assistance from a provider.

23     (4) Rank four. A recipient's functioning shall be classified as rank four if he or she
       can perform a function, but only with substantial human assistance.
24

25     (5) Rank five. A recipient's functioning shall be classified as rank five if he or she
       cannot perform the function, with or without human assistance.
26

27  Cal. Welf. & Inst. Code § 12309(d)(1)-(5).

28     46.     These ranks are further defined and explained, with specific descriptions, examples,

10

Class Action Complaint for Injunctive and Declaratory Relief

1 and sample observations for what constitutes a rank of 1, 2, 3, 4, or 5, for each of the 14 ADLs, in

2 the Annotated Assessment Criteria, revised Attachment B to All-County Letter ("ACL") 06-34

3 (April 27, 2007).

4     47.     Although social workers rank most ADLs on a scale of 1-5, there are certain

5 exceptions: laundry is ranked only 1, 4, or 5; shopping is ranked only 1, 3, or 5; respiration is

6 ranked only 1 or 5; and the three categories of mental functioning (memory, orientation, and

7 judgment) are ranked either 1, 2, or 5.

8     48.     There are no functional ranks assigned to certain tasks for which IHSS hours may be

9 authorized, such as repositioning and rubbing skin, care and assistance with prosthetic devices, and

10 assistance with self-administration of medication. MPP § 30-757.14(g)(i).

11     49.   A recipient must have a functional rank of at least 2 with respect to any ADL to be

12 eligible for the corresponding IHSS service. MPP § 30-763.1. Otherwise, before the enactment of

13 ABX4 4, the functional ranks have not had any relationship to eligibility for IHSS.

14     **3.     Hourly Task Guidelines**

15     50.     CDSS has established "statewide hourly task guidelines and instructions to provide

16 counties with a standard tool for consistently and accurately assessing service needs and

17 authorizing service hours to meet those needs." Cal. Welf. & Inst. Code § 12301.2(a)(1).

18     51.     The applicable regulations specify the standard time ranges required for each IHSS

19 task and set forth criteria that are relevant to when an individual's needs would fall outside this

20 range. Cal. Welf. & Inst. Code § 12301.2(a)(2); MPP § 30-757.

21     52.     Counties are required to deviate from the hourly task guideline amount if a

22 recipient's needs fall outside this standard range, and in such cases counties must document the

23 need for that service level. Cal. Welf. & Inst. Code § 12301.2(c). There are multiple reasons why

24 a recipient's need for and authorization for IHSS hours might differ from the hourly task

25 guidelines, as set forth in the Manual. MPP § 30-757.1.

26     53.     For every service with hourly task guidelines, the standard time range is so broad

27 that it overlaps for functional ranks 2 through 5. For example, in meal preparation, the standard

28 time range for functional rank 2 is 3.02-7.00 hours per week, rank 3 is 3.5-7.00 hours per week,

11

1   rank 4 is 5.25-7.00 hours per week, and rank 5 is 7 hours per week. MPP § 30-757.131(a). A

2   recipient may thus rank either 2, 3, or 4 in meal preparation and still receive 5-7 hours per week for

3   this service without deviating from the standard hourly task guideline.

4       54.     Some services have limitations in hours that are not related to functional rank at all:

5   domestic services are limited to six hours per month; laundry services are limited to one hour per

6   week (or 1.5 hours per week if laundry facilities are not available on the premises), and shopping

7   and other errands are limited to 1.5 hours per week. MPP § 30-757.11(k)(1), .134(c) & (d),

8   .135(b)(i).

9       55.     Social workers do not use the functional ranks or the hourly task guidelines to

10   determine in the first instance whether a recipient is eligible for IHSS services, or the number of

11   hours to authorize for each service. Instead, social workers use the functional ranks and hourly

12   task guidelines to double check their individualized assessment of services needed, and then

13   document any case in which authorized services do not match the hourly task guidelines.

14       56.     If a social worker finds that an individual needs more than the standard amount of

15   hours for a service, that does not affect the functional rank.

16       57.     After a county determines the number of hours required for each needed service, it

17   must adjust those hours downward if the recipient shares the need with someone else in the

18   household or if some other agency or person provides the service without charge. MPP §§ 30-

19   763.3, .4, .6. The number of hours authorized for each needed IHSS service is the result of that

20   adjustment process. MPP § 30-763.7.

21       58.     The maximum amount of IHSS services that a recipient is allowed to receive is 283

22   hours per month if the person is "severely disabled" or 195 hours per month if the person is not

23   severely disabled. Welf. & Inst. Code §§ 12303.4(a) & (b), 14132.95(g), 14132.951(b).

24     **B.**     **ABX4 4**

25       59.     On July 28, 2009, the Governor of California signed into law ABX4 4, which was

26   enacted as part of the Fourth Extraordinary Legislative Session. ABX4 4 amended California

27   Welfare and Institutions Code Sections 12309(e) and 12309.2 ("Sections 12309(e) and 12309.2")

28   to eliminate crucial IHSS services to over one hundred thousand recipients.

12

1              **1.    Loss of Eligibility For All IHSS Services**

2         60.    Under Section 12309.2 as amended by ABX4 4, IHSS recipients with composite

3    functional index scores ("FI Scores") of below 2.0 are no longer eligible for any IHSS services.

4         61.    The FI Score was originally designed in the mid-1980's as part of a "uniformity

5    system" for quality control and comparison purposes among counties (not among individuals).

6    ACL 88-118 (Sept. 6, 1988), Question 14.

7         62.    CDSS has tested the FI Score, and determined that it is not meaningful.

8         63.    Before the enactment of ABX4 4, the counties administering the IHSS program did

9    not utilize the FI Score for any purpose, including quality control. Before the enactment of ABX4

10   4, most county social workers were not even aware of the FI Scores of individual IHSS recipients.

11        64.    The FI Score was not designed, and has never been used in the past, to determine

12   eligibility or need. The FI Score was not designed, and has never been used in the past, to predict

13   the service hours that any individual recipient should receive. ACL 88-118, Question 13.

14        65.    Before the enactment of ABX4 4, IHSS recipients were not notified of their FI

15   Score. The FI Score did not appear on the NOAs that recipients receive upon assessment or

16   reassessment.

17        66.    The FI Score is a number between 1.00 and 5.00 calculated by the Case

18   Management and Payrolling System ("CMIPS") for each IHSS recipient. ACL 88-118, Question

19   7. The formula for calculating the FI Score, which has not changed since 1988, involves

20   calculating a weighted average of the functional rankings for each of the 11 physical task ADLs.

21   ACL 88-118, Questions 9, 10; Draft ACL at 2. In general, these weights were determined by

22   taking the average (mean) number of hours assigned for these tasks by counties in 1988 and

23   determining the proportion of time each task represented with respect to the total aggregate hours

24   allocated for IHSS services. ACL 88-118, Question 10.

25        67.    The composite FI Score is not an accurate or reliable measure of need for IHSS

26   services because it was not designed to, and does not, provide information about the likelihood that

27   any individual IHSS recipient is at risk of physical or mental injury, and/or out-of-home placement

28   or institutionalization, in the absence of IHSS services.

13

1    68.    The FI Score is a poor measure of need because it does not allow for individual

2    assessment of need based on individual circumstances, as set forth in the succeeding paragraphs.

3    69.    The FI Score measures the weighted average of 11 functional ranks, and does not

4    measure whether any particular services are critical to any particular individual. Thus, the FI

5    Scores of recipients who only need a few of the 11 services measured will be low, even if the need

6    for those few services is critical.

7    70.    The FI Score measures the average of 11 functional ranks, weighted based on the

8    number of hours authorized by counties to those tasks in 1988. Counties' assessment of hours may

9    not have been uniform or accurate in 1988. The population of individuals receiving IHSS services

10   has changed since 1988.

11   71.    The FI Score does not include the functional ranks for mental functioning (memory,

12   orientation, judgment). Only the eleven functional ranks for physical ADLs are considered in

13   calculating the FI Score. ACL 88-118, Questions 7, 10.

14   72.    Recipients with cognitive or psychiatric disabilities are more likely to receive

15   functional ranks of 2 for the 11 ADL tasks that are used to calculate the FI Score, because they may

16   require verbal rather than physical assistance.

17   73.    The FI Score does not include functional ranks for certain IHSS services for which

18   no functional rank is calculated, including repositioning and rubbing skin, care and assistance with

19   prosthetic devices, assistance with self-administration of medications, and travel to medical

20   appointments.

21   74.    Because children under a certain age receive automatic ranks of 1 for four or more

22   of the eleven tasks (depending on age), their FI Scores tend to be lower than those of adults. *See*

23   MPP § 30-763.451-462.

24   75.    Because recipients of paramedical services receive automatic ranks of 6 for certain

25   tasks, which are then converted to 1's in calculating the FI Score, their FI Scores tend to be lower

26   than they would be otherwise. *See* MPP § 30-756.41-42.

27   76.    Although the FI Score is not a rational measure of need for any individual, the

28   above-described factors cause FI Scores to be a particularly poor measure for certain groups of

14

1  IHSS recipients, including children, individuals with impairments in mental functioning,
2  individuals whose need is greatest in areas where not very many hours are allocated on a statewide
3  basis, individuals who have high need in a few areas, individuals who receive paramedical
4  services, and individuals whose greatest need is for medication reminders and travel to medical
5  appointments.

6  77.  ABX4 4 established exemptions to the eligibility restriction for IHSS recipients
7  authorized for paramedical services, protective supervision, or 120 or more hours of IHSS per
8  month. The bill also gave authority to the Director of CDSS to waive these exemptions if
9  necessary to maintain federal financial participation, and the Governor's veto message indicated
10  the Governor's intent to waive all three of these exemptions.

11  78.  In a draft All County Letter released on September 18, 2009 ("Draft ACL"), CDSS
12  stated that the exemptions for paramedical services and protective supervision were being retained
13  for the time being, but that the Director had waived the exemption for recipients who are
14  authorized to receive at least 120 hours of IHSS services per month. The Draft ACL stated that it
15  was possible that the exemptions for protective supervision and paramedical services would be
16  waived, based on guidance from the federal government. Accordingly, Plaintiffs still do not know
17  whether recipients who are authorized for paramedical services or protective supervision will be
18  subject to the eligibility restrictions.

19  **2.  Reductions in Domestic and Related Services**

20  79.  Under Section 12309(e) as amended by ABX4 4, even IHSS recipients who remain
21  eligible for IHSS services will no longer receive domestic and related services (meal preparation
22  and clean up, laundry, shopping and errands) if their functional rank is below 4 for that particular
23  service.

24  80.  Other than the functional rank of 1, the functional ranks were not designed as
25  measures of eligibility for assistance for a particular task. Before the enactment of ABX4 4, the
26  functional ranks 2, 3, 4, or 5 were never used to determine eligibility for services.

27  81.  All IHSS recipients with functional ranks of 2, 3, 4, or 5 have been individually
28  assessed by a social worker to need authorized services for a specified number of hours to live

15

1  safely in their homes. Recipients with a functional rank of 2 or 3 have as great a need for domestic
2  and related services as recipients with a rank of 4 or 5; they cannot perform those functions safely
3  without assistance.

4      82.    Individuals with cognitive or psychiatric, as opposed to physical, disabilities often
5  receive a 2 rank for many ADLs, because they need verbal as opposed to physical assistance.
6  Because, by definition, they cannot perform the given activity without this verbal assistance, their
7  need for this verbal assistance is as great as the need of recipients who need physical assistance to
8  perform the same activity.

9      83.    It is often difficult for social workers to distinguish between the ranks of 3 (need
10  "some human assistance") and 4 (need "substantial human assistance"), especially when a
11  recipient's functioning may vary from day to day.

12      84.    Prior to the enactment of ABX4 4, IHSS recipients were not notified of their
13  functional ranks. These functional ranks did not appear on the NOAs that recipients receive upon
14  their assessment and reassessment.

15      85.    On information and belief, DSS will not require the reassessment or review of the
16  impact that elimination of domestic and related services may have on IHSS recipients' assessed
17  needs in relation to other activities.

18      86.    ABX4 4 established exemptions to the elimination of domestic and related services
19  for IHSS recipients authorized for paramedical services, protective supervision, or 120 or more
20  hours of IHSS services per month. The bill also gave authority to the Director of the Department
21  of Social Services to waive these exemptions if necessary to maintain federal financial
22  participation, and the Governor's veto message indicated the Governor's intent to waive all three of
23  these exemptions.

24      87.    In the Draft ACL, CDSS stated that the exemptions for protective supervision and
25  paramedical services were being retained for the time being, but that the Director had waived the
26  exemption for recipients who are authorized to receive at least 120 hours of IHSS services per
27  month. The Draft ACL stated that it was possible that the exemptions for protective supervision
28  and paramedical services would also be waived, based on guidance from the federal government.

16

1  Accordingly, Plaintiffs still do not know whether recipients who are authorized for protective
2  supervision or paramedical services will be subject to the cuts in domestic and related services.

3  **3.  Notice to Recipients and Fair Hearing Rights**

4  88.  IHSS recipients have not heretofore been informed of the possibility that they will
5  lose eligibility for IHSS services based on their FI Score or the possibility that they will lose
6  eligibility for domestic and related services based upon their functional ranks for those services.

7  89.  Many IHSS recipients who have requested their FI Scores and/or their individual
8  functional ranks from their social workers and/or counties have been unable to obtain them.

9  90.  On September 18, 2009, CDSS issued a draft All-County Letter ("Draft ACL")
10  stating that the IHSS eligibility restrictions and service cuts would be implemented on November
11  1, 2009. Although this was issued as a draft, on information and belief, CDSS intends to issue a
12  final ACL with similar instructions to counties shortly, and is already in the process of
13  implementing the Draft ACL.

14  91.  The Draft ACL states that IHSS recipients will be notified of their FI Scores if they
15  are losing eligibility for IHSS services, and of their functional ranks for domestic or related
16  services if they are losing one or more of those services.

17  92.  The proposed notice attached to the Draft ACL does not provide IHSS recipients
18  who will lose domestic and related services with sufficient information to enable them to determine
19  if their functional ranks have been correctly calculated, because it does not provide recipients with
20  the detailed descriptions of how functional ranks are to be determined for each separate ADL, as
21  set forth in the Annotated Assessment.

22  93.  The proposed notice attached to the Draft ACL does not provide IHSS recipients
23  who will lose eligibility for IHSS with adequate information to determine if their FI Score has been
24  correctly calculated, because it does not set forth the 11 individual functional ranks that make up
25  the composite FI Score, fully explain the meaning of the ranks, or provide recipients with the
26  formula by which their FI Score is calculated.

27  94.  The Draft ACL also states that recipients will be notified of the cuts or reductions in
28  IHSS services in "[t]imely" notices of action. On information and belief, Defendants will notify

17

1   recipients that their IHSS services have been cut or reduced only ten days before the
2   implementation date of November 1, 2009.

3       95.     The timing of the notice to IHSS recipients of the eligibility restrictions and
4   elimination of authorized hours will not provide adequate time for recipients to make alternative
5   arrangements for assistance, to the extent such arrangements are possible.

6       96.     According to the Draft ACL, recipients will be able to request hearings regarding
7   disputes over their FI Scores or functional ranks, and to request aid paid pending appeal if they file
8   their hearing requests prior to the effective date of the notice of action.

9       97.     According to the Draft ACL, even though recipients may request hearings regarding
10  disputes over scores and ranks, recipients may not file a state hearing request to appeal or contest
11  authorization of service hours. Instead, recipients who believe they need more authorized hours
12  must first request a county reassessment. According to the Draft ACL, for the first twelve month
13  period following the date of the Draft ACL, recipients who seek a county reassessment of their
14  authorized IHSS hours sooner then the next scheduled reassessment must provide documentation
15  from the recipient's physician of a change in their functional ability that would significantly affect
16  one or more of their functional rankings. The county is supposed to deny any request for
17  reassessment that lacks medical documentation. Recipients may request a state hearing on the
18  denial of a request for reassessment.

19      98.     Defendants operate the state administrative hearing system through a series of
20  regional hearing offices. Recipients and applicants who appeal denials or reductions of Medi-Cal,
21  IHSS, Cal-Works, Food Stamps, Adoption Assistance and other public benefits must file a timely
22  request for hearing with the hearing office or the local welfare office. On information and belief,
23  these hearing offices are presently unable to respond in a timely manner to all the claimants who
24  request administrative hearings, so that the state hearing officers recently decided to no longer
25  consider requests for reconsideration of an adverse hearing decision.

26      99.     On information and belief, as many as 100,000 class members may request an
27  administrative hearing to appeal the reduction or termination of their IHSS benefits pursuant to
28  ABX4 4. Because Defendants have failed to allocate the staff and resources to respond to this

18

Class Action Complaint for Injunctive and Declaratory Relief

1  number of expected hearing requests, Plaintiffs will be unable to obtain a timely hearing regarding
2  their appeals.

3      100.    IHSS recipients have not been, and will not be, notified of the availability of
4  replacement services available under the Medi-Cal State Plan, to the extent any other services are
5  available. Nor have the State or counties arranged for such replacement services, to the extent any
6  services are available.

7      **4.    Impact upon Recipients**

8      101.    The loss of eligibility for all IHSS services or the loss of domestic and related
9  services is likely to cause Plaintiff Class members to suffer declines in physical functioning,
10  increased medical complications, and additional preventable accidents resulting in physical injury.
11  This will expose them to a serious risk of harm to their health and safety and cause a serious risk of
12  unwanted out-of-home placement, including unwanted institutionalization.

13      102.    The loss of eligibility for all IHSS services or the loss of domestic and related
14  services is likely to cause Plaintiff Class members to suffer declines in mental functioning. This
15  will expose them to a serious risk of harm to their health and safety and cause a serious risk of out-
16  of-home placement, including unwanted institutionalization.

17      103.    Individuals whose physical or cognitive impairments are such that they cannot be
18  left alone or whose health conditions are extremely unstable are likely to face immediate out-of-
19  home placement in an institution.

20      104.    Other individuals will lose physical and mental functioning as a result of the loss of
21  or reduction in their IHSS services. For example, individuals with psychiatric disabilities may stop
22  taking their medications and become delusional, suicidal, or otherwise present a danger to
23  themselves and others. Individuals deprived of shopping, meal preparation and and/or eating
24  assistance may become malnourished or ill because they eat foods contraindicated by medical
25  conditions or necessary medications, or fail to eat at all. Individuals deprived of domestic services
26  may suffer falls or other injuries if they attempt to perform cleaning and other household tasks.
27  Other individuals will live in unsanitary and potentially hazardous situations that can lead to falls,
28  illness, and/or eviction and homelessness. The mental or physical functioning of these individuals

19

1 | is likely to deteriorate to the point that they also face out-of home placement, including unwanted
2 | and preventable institutionalization.

3 | 105. Out-of-home placement in an institution can often further destabilize already
4 | compromised mental or physical functioning. Once placed in an institution, it is extremely difficult
5 | for individuals to move out of institutions and back into the community.

6 | 106. It costs far more to institutionalize elderly and disabled individuals in nursing homes
7 | or other institutions than it does to provide IHSS services that allow them to live in community-
8 | based settings.

9 | 107. The IHSS Program helps prevent costly and unnecessary institutionalization, saving
10 | the State significant funds, and, at the same time, improving the quality of life for the individuals
11 | served.

12 | **C. Facts Related to Individual Plaintiffs**

13 | **1. Named Plaintiff V.L.**

14 | 108. Named Plaintiff V.L. is a 14-year-old boy, and is a qualified person with a
15 | disability—specifically, Charcot-Marie-Tooth Disease ("CMT"), an inherited form of muscular
16 | dystrophy known as peroneal muscular atrophy. He lives with his family in San Francisco,
17 | California and attends a local middle school.

18 | 109. Because of his disabilities, V.L. has wasting and weakness in his hands, feet, and
19 | legs. It is difficult for him to stand or walk for more than a few minutes. He wears an orthotic
20 | brace to help him stand and walk, even in the shower. V.L. cannot sense when shower water is too
21 | hot or too cold. Because of weakness in his hands, V.L. has trouble cutting and eating his food,
22 | and putting on and taking off his leg braces and wrist splints. V.L. also requires help getting
23 | dressed, as he cannot put on or button his clothes. V.L. also requires assistance to use the
24 | bathroom.

25 | 110. V.L. is authorized to receive 44.8 hours of IHSS services per month. His provider
26 | helps him out approximately ten hours per week with such personal tasks as using the restroom,
27 | bathing, getting dressed, exercising, and putting on and taking off his leg brace and wrist splints.

28 | 111. V.L.'s mother was recently told by his social worker that he will be losing eligibility

20

1 | for all IHSS services because his FI Score is below 2.0.

2 | 112. These IHSS services are critical to enable V.L. to remain safely in his home with his

3 | family and to attend a local school. V.L.'s mother is unable to assist V.L., because she also has

4 | CMT and uses a wheelchair. V.L.'s father works during the day, and thus is not available to help

5 | V.L. during work hours. V.L.'s need for services is so great that his older brother has temporarily

6 | dropped out of college at CSU-Northridge in order to serve as V.L.'s IHSS provider until V.L's

7 | regular provider returns from an extended leave of absence.

8 | **2. David Oster**

9 | 113. David Oster is a 33-year-old man who is a qualified person with disabilities,

10 | including autism and bi-polar disorder. He lives by himself in an apartment in Los Angeles

11 | County.

12 | 114. Because of his disabilities, Mr. Oster is unable to remember to take his medications

13 | (consisting of some 20 pills, including medications necessary to control his bi-polar disorder) and

14 | is unable to go shopping, cook, or clean up after himself. For example, he cannot concentrate and

15 | follow directions to cook a nutritionally balanced meal following the diet prescribed by his doctor,

16 | and forgets to put food away before it spoils. Mr. Oster is also unable to get to medical

17 | appointments himself, as he cannot drive and becomes confused if he tries to take public

18 | transportation.

19 | 115. Before he began receiving IHSS services, Mr. Oster's apartment was in great

20 | disarray. Trash, clutter, and rotten food were strewn about his apartment, which was infested with

21 | cockroaches. Mr. Oster had to pick his way among makeshift pathways between the debris. All

22 | the food in his refrigerator was spoiled. His clothes were dirty, and he rarely bathed. He was at risk

23 | of serious health consequences from the unsanitary conditions and inadequate meals, and was also

24 | in serious danger of eviction from his apartment because of the unsanitary conditions in which he

25 | was living.

26 | 116. Mr. Oster began receiving IHSS services approximately two years ago and currently

27 | receives 63.2 hours per month of IHSS services. Without these services, he would not be able to

28 | live independently in the community.

21

1    117.   Mr. Oster's IHSS provider performs the following services: cooks meals following

2 the diet that has been medically prescribed by Mr. Oster's doctor; sets out medications and reminds

3 Mr. Oster to take them; takes Mr. Oster to doctor's appointments; reminds Mr. Oster to bathe; does

4 Mr. Oster's laundry; and cleans the apartment and changes bed linens.

5    118.   Mr. Oster's social worker has told Mr. Oster that his FI Score is 1.9. Because his FI

6 Score is below 2.0, Mr. Oster will lose eligibility for all IHSS services. Although Mr. Oster has

7 functional ranks of 5 for housework, laundry, and shopping, and a functional rank of 3 for meal

8 preparation, his composite FI Score is under 2.0 because he is ranked a 1 for many other ADLs that

9 he can perform himself, such as eating, bowel/bladder care, mobility, transfer, and respiration.

10    119.   When Mr. Oster learned that his IHSS services would be cut, he was so terrified

11 about losing services that he had a nervous breakdown and had to be hospitalized for two weeks for

12 inpatient psychiatric services. Upon discharge, he then had to continue in a psychiatric outpatient

13 program for several weeks more.

14    120.   Mr. Oster does not want to lose his apartment or his independence and does not

15 want to live in a group home or board and care facility where his independence and freedom would

16 be restricted. He is sure that he will not be able to maintain his independence without IHSS

17 services. Without IHSS services, Mr. Oster is at serious risk of increased psychiatric problems,

18 including hospitalization and institutionalization, because he cannot take his medications, cook his

19 medically necessary diet, or maintain sanitary conditions necessary to maintain an independent

20 apartment.

21    121.   Prior to his recent conversation with his social worker, Mr. Oster had never been

22 informed of his functional ranks or FI Score.

23    **3.**   **Willie Beatrice Sheppard**

24    122.   Named Plaintiff Willie Beatrice Sheppard is 81 years old and is a qualified person

25 with disabilities, including arthritis and the effects of a stroke. She lives by herself in an apartment

26 in Emeryville, California.

27    123.   Ms. Sheppard uses a cane or electric wheelchair for mobility and cannot stand for

28 any length of time. She cannot get in and out of the bathtub without assistance. Sometimes Ms.

22

1 │ Sheppard cannot use her hands or the entire right side of her body because of her stroke and cannot
2 │ pick up any heavy object. Ms. Sheppard is also easily fatigued.

3 │     124.    Ms. Sheppard has been receiving IHSS services since 2003.

4 │     125.    Ms. Sheppard's IHSS provider comes to her home twice a week to help her bathe, to
5 │ clean the house, and to prepare meals (in sufficient quantities that Ms. Sheppard can microwave the
6 │ leftovers on days that her provider is not working).

7 │     126.    Meal preparation is essential to Ms. Sheppard's health and well being, as she does
8 │ not have sufficient strength in her hands, or the stamina to stand, to cook meals. Ms. Sheppard's
9 │ physician has advised her that she cannot eat foods that are high in sodium because of her stroke
10 │ risk. For that reason, Ms. Sheppard must avoid eating prepared processed foods.

11 │     127.    Ms. Sheppard is only able to bathe two days a week, on those days when her
12 │ provider is there. Were it not for her provider, Ms. Sheppard would be unable to bathe at all.

13 │     128.    Ms. Sheppard's provider performs all heavy housecleaning for her, as Ms. Sheppard
14 │ is unable to push around a vacuum or mop while walking with a cane, and is unable to scrub the
15 │ bathroom. If she attempted these tasks, she might fall and further injure herself. She has had
16 │ several previous falls. Because Ms. Sheppard is 81 years old, she is more susceptible to illnesses,
17 │ and thus a clean house is important to her health and well-being.

18 │     129.    Because of her mobility impairments, it is very difficult for Ms. Sheppard to travel
19 │ outside her home. Accordingly, her provider must shop for groceries and pick up her prescription
20 │ medications.

21 │     130.    Ms. Sheppard lives alone and is dependent upon IHSS services. Most of her
22 │ children do not live in the area, and her one daughter who does live nearby has a disabled son who
23 │ requires her full time attention.

24 │     131.    Ms. Sheppard has never been informed of her FI Score or her functional ranks. She
25 │ is afraid that her IHSS eligibility may be eliminated or her service hours for domestic (cleaning)
26 │ and meal preparation will be reduced. If this happens, she will not have adequate meals or
27 │ sanitation, resulting in a serious risk that Ms. Sheppard's medical condition will deteriorate or she
28 │ will fall and injure herself and then will require placement in a nursing home. Ms. Sheppard used

1  to work in a nursing home and knows that nursing home staff are often overworked and unable to
2  provide quality care to each resident. Thus, she wants to avoid having to be placed in a nursing
3  home.

**4.    Named Plaintiff C.R.**

5      132.    C.R. is a five-year-old boy and is a qualified person with a disability, specifically,
6  development disability caused by chromosome deletion. He lives with his family in Gilroy,
7  California. His mother and *guardian ad litem* here, Michelle Rivera, is his provider.

8      133.    C.R. has a developmental disability because he is missing the chromosome known
9  as 3P25, which causes a disconnect between his brain and his body parts. C.R. has global delays
10  across all spectrums: He cannot walk, talk, or chew food. He uses a manual wheelchair, because
11  he does not have the mental capacity to use a motor or power chair. He has to be repositioned
12  regularly, because he can only sit up for twenty minutes at a time. He also has hearing loss and
13  vision loss.

14     134.    Because of his disabilities, C.R. cannot eat or drink by himself. His mother helps
15  him drink by placing a sippy cup firmly in his hands, wrapping his hands around the cup, and then
16  putting the cup to his mouth. He can then suck on the sippy cup. Because he cannot chew food, all
17  of his food must be pureed. His mother must place food into his mouth, spoonful by spoonful,
18  until he swallows it. It takes about twenty minutes to feed C.R. each meal. C.R. does not receive
19  IHSS services for eating/feeding. On information and belief, C.R. does not receive IHSS services
20  for feeding because the county has determined he is too young to receive IHSS services for
21  feeding.

22     135.    C.R. wears diapers because he cannot control his bowels, but does not receive IHSS
23  services for toileting and dressing. On information and belief, C.R. does not receive IHSS services
24  for toileting or dressing because the county has determined he is too young to receive IHSS
25  services for toileting and dressing.

26     136.    C.R. is authorized for 55 hours of IHSS services per month for transportation to
27  medical appointments (40 miles away), moving in and out of bed or a vehicle (a special school bus
28  that picks him up to attend preschool for children with disabilities), rubbing skin, and

24

1  repositioning.

2      137.  C.R.'s mother has been told that C.R. will lose eligibility for IHSS services because
3  his FI Score is 1.97.

4      138.  Although C.R. only receives 52 hours of IHSS services per month, those IHSS
5  service hours are critical.  His mother works as his provider and uses the money she earns to
6  purchase C.R.'s special, medically necessary foods and gas to take him to his many medical
7  appointments.

8      139.  C.R. needs to stay at home with his mother as his provider.  In order to fully
9  maximize his potential, he needs one-on-one care on a constant basis to encourage each small step
10 of being able to control his body himself.  Although doctors are unable to predict the prognosis for
11 a child with C.R.'s type of disability, they do know that if there is to be any hope for C.R. to learn
12 to walk, talk, or chew on his own, he needs continued one-on-one care to encourage him to do
13 everything that he can learn to do.

14     140.  If the only way for C.R. to stay at home would be for his family to hire an outside
15 provider, rather than his mother, they would do that.  However, they do not believe they will be
16 able to find anyone capable of caring for him; they looked before but were unable to find anyone.

17                    **CLASS DEFINITION AND ALLEGATIONS**

18     141.  Pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure,
19 Individual Named Plaintiffs V.L., David Oster, Willie Beatrice Sheppard, and C.R bring this action
20 on behalf of themselves and all other persons similarly situated.  Plaintiffs bring this action on
21 behalf of a class consisting of "all recipients of IHSS in the State of California whose IHSS
22 services will be limited, cut, or terminated under the provisions of ABX4 4, and all applicants to
23 IHSS in the State of California who would have been eligible for IHSS services but who are either
24 not eligible, or are eligible for fewer services, as a result of ABX 4 4 (hereinafter the "Class")."

25     142.  Plaintiffs V.L., David Oster, Willie Beatrice Sheppard, C.R., and others similarly
26 situated also plead subclasses of individuals as follows:

27          a.      For the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and
28                  Eighth claims for relief: "Loss of Domestic and Related Services Subclass"

25

Class Action Complaint for Injunctive and Declaratory Relief

1    to be defined as "all present and future IHSS recipients and applicants who
2    have been or would have been authorized to receive domestic and/or related
3    IHSS, and whose IHSS will be reduced to eliminate some or all of their
4    domestic and/or related services under the provisions of ABX4 4." Plaintiff
5    Willie Beatrice Sheppard is typical of this subclass.

6    b.    For the First, Second, Third, Fourth, Fifth, Seventh, Eighth, and
7    Ninth claims for relief: "Termination of Benefits Subclass" to be defined as
8    "all present and future IHSS recipients and applicants who have been or
9    would have been authorized to receive IHSS, and whose IHSS services will
10   be terminated or denied in their entirety under the provisions of ABX4 4."
11   Plaintiffs V.L., David Oster, and C.R. are typical of this subclass.

12   c.    For the Eighth claim for relief: "Children Subclass" to be defined as
13   "all present or future IHSS recipients who are under the age of 21, who
14   qualify for full-scope Medi-Cal with federal financial participation, and who
15   therefore are entitled to the protections of the Early Periodic Screening
16   Diagnosis and Treatment provisions of the federal Medicaid Act, 42 U.S.C.
17   § 1396a(a), who have been or would have been authorized to receive IHSS,
18   and whose IHSS services will be reduced or terminated under the provisions
19   of ABX4 4." Plaintiffs C.R. and V.L. are typical of this subclass.

20   143.   **Numerosity:** The Plaintiff Class is so numerous that joinder of all its members is
21   impracticable. There are more than 130,000 persons in the Class. Upon information and belief the
22   "Termination of Benefits subclass" consists of approximately 36,000 individuals. Upon
23   information and belief, the "Loss of Domestic and Related Services Subclass" consists of
24   approximately 97,000 people. Upon information and belief the "Children Subclass" consists of
25   over one thousand children. Joinder of individuals in the Class and subclasses is also impracticable
26   because of the size of the subclasses, and because members of the Plaintiff Class lack the
27   knowledge and financial means to maintain individual actions and are geographically disbursed
28   throughout the state.

26

Class Action Complaint for Injunctive and Declaratory Relief

1  144.  **Commonality**: Common questions of law and fact predominate over questions
2  affecting individual Class members. Questions of law and fact common to members of the Class
3  include but are not limited to whether Sections 12309 and 12309.2 violate provisions of the
4  Medicaid Act, the ADA, and Section 504, and whether the implementation of Sections 12309 and
5  12309.2 fail to meet the requirements of procedural due process established by the U.S.
6  Constitution.

7  145.  **Typicality**: The claims of the Individual Named Plaintiffs are typical of the claims
8  of the Class as a whole and are typical of the claims of the subclasses in that the Individual Named
9  Plaintiffs and members of the Plaintiff Class currently are eligible IHSS participants and qualified
10  individuals with disabilities who will be affected similarly by the IHSS eligibility changes enacted
11  by ABX4 4 and Defendants' policies and practices. The claims arise from the same unlawful and
12  discriminatory law and policies and practices of Defendants.

13  146.  **Adequate representation**: The Individual Named Plaintiffs will fairly represent
14  and adequately protect the interests of members of the class as a whole. The Individual Named
15  Plaintiffs do not have any interests antagonistic to those of other members of the Plaintiff Class.
16  By filing this action, the Individual Named Plaintiffs have displayed an interest in vindicating their
17  rights, as well as the claims of others who are similarly situated. The relief sought by the
18  Individual Named Plaintiffs will inure to the benefit of members of the Plaintiff Class generally.
19  Plaintiffs are represented by counsel who are experienced, skilled, and knowledgeable about civil
20  rights litigation, disability discrimination, Medicaid law, practice and procedure in the federal
21  courts and the prosecution and management of class action litigation.

22  147.  Class certification is appropriate pursuant to Federal Rules of Civil Procedure
23  23(b)(2) because Defendants have acted, refused to act, or will act on grounds generally applicable
24  to the Class, thereby making final injunctive and declaratory relief appropriate with respect to the
25  Class as a whole.

26  148.  Members of the plaintiff class share a common need for IHSS services and
27  Defendants' policies and actions in limiting or terminating IHSS services, and the provisions of
28  ABX 4 4, are applicable to the entire class.

27

**LEGAL CLAIMS**

149.    Defendants' actions, as alleged herein, have resulted in, and will continue to result in, irreparable injury to members of the Plaintiff Class for which they have no plain, speedy, or adequate remedy at law. Members of the Plaintiff Class will suffer irreparable injury in that they will be deprived of critical health-related services and subjected to imminent risk of out-of-home placement, institutionalization and/or harm to their health and safety.

150.    IHSS provider members of the organizational plaintiffs who provide IHSS services for members of the Plaintiff Class will also be subject to irreparable injury, for they will lose employment and hours of work for which they will be unable to recover monetary damages and which will lead to harm to their health and deprivation of life necessities. Some members of these organizational plaintiffs and their minor children for whom they provide services are at risk of losing their children's IHSS services and will suffer irreparable injury as a result.

151.    An actual controversy exists between Plaintiffs and Defendants in that Defendants are seeking to implement reductions and terminations in IHSS services to which members of the Plaintiff Class are entitled, and which, if implemented, will place members of the Plaintiff Class at risk of unnecessary out-of-home placement, institutionalization and harm to their physical and mental health. Further, these reductions and terminations violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the ADA, Section 504, and various provisions of the Medicaid Act. Plaintiffs therefore seek a declaration as to their rights and Defendants' corresponding duties with respect to the matters alleged herein.

152.    The balance of harms favors entering an injunction because the harm suffered by individuals deprived of crucial and needed IHSS outweighs any monetary loss to Defendants.

153.    It is in the public interest that the Court grant an injunction to ensure that Plaintiffs and other similarly situated individuals receive medically necessary medical benefits to which they are entitled.

154.    In taking the relevant actions, Defendants have acted under color of state law.

28

1
2

**FIRST CLAIM FOR RELIEF**
**(Defendants Director Wagner and Director Maxwell-Jolly)**
**Constitutional Due Process**

3      155.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

4    paragraph set forth previously.

5      156.    Plaintiffs and members of the Plaintiff Class are entitled under federal and state law

6    to adequate notice of and opportunity for a pre-termination or pre-reduction hearing on any

7    termination or reduction in medical care and services. U.S. CONST. Amend. XIV. *See Goldberg*

8    *v. Kelly*, 397 U.S. 254 (1970).

9      157.    The notice Defendants propose to send is not adequate or effective, because it does

10   not provide Plaintiffs and members of the plaintiff class with sufficient information to obtain a

11   meaningful hearing because they will be unable to determine whether their functional ranks or FI

12   Scores have been correctly calculated.

13     158.    The notice Defendants propose to send is not adequate or effective, because it

14   inaccurately summarizes state law with respect to recipients' right to reassessment of their need for

15   service hours. The notice tells recipients that they can only request reassessment of their need for

16   service hours if they provide medical documentation of a change in functioning that would affect

17   their functional rank, whereas state law provides for county reassessment of a recipient's need for

18   services "any time" that the recipient notifies the county of a need to adjust the supportive services

19   hours authorized. Cal. Welf. & Inst. Code § 12301.1(d).

20     159.    The notice Defendants propose to send is not adequate or effective, because ten days

21   is not sufficient time for IHSS recipients, many of whom have cognitive or psychiatric disabilities,

22   to make alternate arrangements and/or appeal the decision to reduce or terminate their services.

23     160.    On information and belief, Plaintiffs and Class members will be unable to obtain a

24   timely hearing if they do file an appeal.

25     161.    Unless enjoined, Defendants will reduce or terminate IHSS services to which

26   members of the Plaintiff Class are entitled and have a property interest in maintaining, thereby

27   depriving class members of their right to an opportunity for fair hearing before reduction or

28   termination of benefits.

29

1    162.    These actions violate the Due Process Clause of the Fourteenth Amendment to the

2    U.S. Constitution, U.S. CONST. Amend. XIV.

3    163.    Defendants' actions deprive Plaintiffs and members of the Plaintiff Class of rights,

4    privileges or immunities secured to them by the Constitution of the United States, in violation of 42

5    U.S.C. § 1983.

6    **SECOND CLAIM FOR RELIEF**
     **(Defendants Director Wagner and Director Maxwell-Jolly)**
7    **Medicaid Act Right to a Fair Hearing**

8    164.    Plaintiffs reallege and incorporate herein by reference each and every allegation

9    and paragraph set forth previously.

10   165.    Under federal Medicaid requirements, recipients and applicants for Medicaid

11   services have rights to written notice and a pre-termination fair hearing if their benefits are

12   reduced, suspended, or terminated. 42 U.S.C. § 1396a(a)(3).

13   166.    This notice must contain the following:

14   (a)    A statement of what action the State . . . intends to take;
     (b)    The reasons for the intended action;
15   (c)    The specific regulations that support, or the change in Federal or State law that
            requires, the action;
16   (d)    An explanation of—
17          (1)    The individual's right to request an evidentiary hearing if one is available, or
                   a State agency hearing; or
18          (2)    In cases of an action based on a change in law, the circumstances under
                   which a hearing will be granted; and
19   (e)    An explanation of the circumstances under which Medicaid is continued if a hearing
20          is requested.

21   42 C.F.R. § 431.210.

22   167.    Pursuant to the Medicaid Act, California has established procedures to provide fair

23   hearings to any Medi-Cal beneficiary whose services are denied, reduced, or terminated. Cal. Code

24   Regs. tit. 22 § 51014.1(a).

25   168.    In reducing or terminating services as set forth above, Defendants have deprived

26   Plaintiffs and members of the Plaintiff Class of their opportunity to notice and a fair pre-

27   termination hearing in violation of 42 U.S.C. § 1396a(a)(3).

28

30

1    169.    Defendants' actions deprive Plaintiffs and members of the Plaintiff Class of rights,

2    privileges or immunities secured to them by the Constitution of the United States, in violation of 42

3    U.S.C. § 1983, and are preempted by the Supremacy Clause of the United States Constitution,

4    Article IV.

### THIRD CLAIM FOR RELIEF
### (Defendants DHCS and CDSS)
### Americans with Disabilities Act, 42 U.S.C. § 12134-35 et seq.

7    170.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

8    paragraph set forth previously.

9    171.    Title II of the ADA provides that "no qualified individual with a disability shall, by

10    reason of disability, be excluded from participation in or be denied the benefits of services,

11    programs, or activities of a public entity or be subjected to discrimination by such entity." 42

12    U.S.C. § 12132.

13    172.    In enacting the ADA, Congress found that "[i]ndividuals with disabilities

14    continually encounter various forms of discrimination, including . . . segregation . . . ." 42 U.S.C.

15    § 12101(a)(5).

16    173.    Regulations implementing Title II of the ADA provide: "A public entity shall

17    administer services, programs, and activities in the most integrated setting appropriate to the needs

18    of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

19    174.    Defendants DHCS and CDSS are public entities within the meaning of Title II of

20    the ADA.

21    175.    Regulations implementing Title II of the ADA provide: "A public entity may not,

22    directly or through contractual or other arrangements, utilize criteria or other methods of

23    administration: (i) that have the effect of subjecting qualified individuals with disabilities to

24    discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or

25    substantially impairing accomplishment of the objectives of the entity's program with respect to

26    individuals with disabilities. . . ." 28 C.F.R. § 35.130(b)(3).

27    176.    The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581

28    (1999), held that the unnecessary institutionalization of individuals with disabilities is a form of

31

1   discrimination under Title II of the ADA. In doing so, the Supreme Court interpreted the ADA's

2   "integration mandate" as requiring persons with disabilities to be served in the community when:

3   (1) the state determines that community-based treatment is appropriate; (2) the individual does not

4   oppose community placement; and, (3) community placement can be reasonably accommodated.

5   *Id.* 527 U.S. at 607.

6        177.    The ADA prohibits discrimination based on type of disability.

7        178.    The ADA's regulations further provide that "[a] public entity shall not impose or

8   apply eligibility criteria that screen out or tend to screen out an individual with a disability or any

9   class of individuals with disabilities from fully and equally enjoying any service, program, or

10  activity, unless such criteria can be shown to be necessary for the provision of the service,

11  program, or activity being offered." 28 C.F.R. 35.130(b)(8).

12       179.    Pursuant to the ADA, public entities are required to provide meaningful access to

13  their programs, services and activities, and provide any accommodations or modifications

14  necessary for people with disabilities to access those services.

15       180.    Each Individual Named Plaintiff and member of the Plaintiff Class is a "qualified

16  individual with a disability" within the meaning of the ADA in that they (1) have physical and/or

17  mental impairments that substantially limit one or more major life activities; and meet the essential

18  eligibility requirements in that they (2) are capable of living independently in their own homes

19  and/or in the most integrated community setting possible, with assistance; and (3) meet the Medi-

20  Cal income eligibility requirements.

21       181.    Defendants' actions have placed members of the Plaintiff Class at imminent risk of

22  unnecessary confinement in institutions, including nursing facilities, or other out-of home

23  placements that are not the most integrated community placements possible, in violation of the

24  ADA's integration mandate.

25       182.    Defendants discriminate against Plaintiffs and Class members in ways that include,

26  but are not limited to, failing to provide reasonable modifications to programs and services.

27       183.    Defendants have utilized eligibility criteria and methods of administration that

28  subject Individual Named Plaintiffs and members of the Plaintiff Class to discrimination on the

32

Class Action Complaint for Injunctive and Declaratory Relief

1  basis of disability, in violation of 28 C.F.R. § 35.130(b)(3) &(8), and otherwise denied meaningful

2  access to their programs, services and activities.

3    184.    Defendants' actions discriminate against individuals with cognitive and psychiatric

4  disabilities, based on their type of disability, because the functional rankings and FI Scores for such

5  individuals are lower than the functional rankings and FI Scores of individuals with physical

6  disabilities who have the same level of need for IHSS services, and will result in the deprivation of

7  services to individuals with mental disabilities, even if they have the same level of need as

8  individuals with physical disabilities who are not deprived of IHSS services.

9    185.    Defendants' actions violate Title II of the ADA.

10    186.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive

11  relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

12  
13  
**FOURTH CLAIM FOR RELIEF**
**(Defendants DHCS and CDSS)**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.***

14    187.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

15  paragraph set forth previously.

16    188.    Section 504 of the Rehabilitation Act of 1973, on which the ADA is modeled, sets

17  forth similar protections against discrimination by recipients of federal funds, such as Defendants

18  herein. 29 U.S.C. §§ 794-794a. These protections include the prohibition against unnecessary

19  segregation. Regulations implementing Section 504 require that a public entity administer its

20  services, programs and activities in "the most integrated setting appropriate" to the needs of

21  qualified individuals with disabilities. 28 C.F.R. § 41.51(d).

22    189.    Section 504 prohibits discrimination based on type of disability.

23    190.    Section 504's regulations prohibit recipients of federal financial assistance from

24  utiliz[ing] criteria or methods of administration . . . (i) [t]hat have the effect of subjecting qualified

25  handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or

26  effect of defeating or substantially impairing accomplishment of the objectives of the recipient's

27  program with respect to handicapped persons. 28 C.F.R. § 41.51(b)(3)(i); 45 C.F.R. § 84.4(b)(4).

28  

33

1      191.    Each Individual Named Plaintiff and member of the Plaintiff Class is a "qualified

2  individual with a disability" within the meaning of Section 504 in that they (1) have physical

3  and/or mental impairments that substantially limits one or more major life activities; and meet the

4  essential eligibility requirements in that they (2) are capable of living independently in their own

5  homes and/or in the most integrated community setting possible, with assistance; and (3) meet the

6  Medi-Cal income eligibility requirements.

7      192.    Defendants' actions have placed members of the Plaintiff Class at risk of

8  unnecessary confinement in institutions, including nursing facilities, or other out-of-home

9  placements that are not the most integrated community placements possible, in violation of Section

10  504's integration mandate.

11     193.    Defendants discriminate against Plaintiffs and Class members in ways that include,

12  but are not limited to, failing to provide reasonable modifications to programs and services.

13     194.    Defendants have utilized eligibility criteria and methods of administration that

14  subject Plaintiffs and members of the Plaintiff Class to discrimination on the basis of disability in

15  violation of 28 C.F.R. § 41.51(b)(3)(i) and 45 C.F.R. § 84.4(b)(4), and otherwise denied

16  meaningful access to their programs, services and activities.

17     195.    Defendants' actions discriminate against individuals with cognitive and psychiatric

18  disabilities, based on their type of disability, because the functional rankings and FI Scores for such

19  individuals are lower than the functional rankings and FI scores of individuals with physical

20  disabilities who have the same level of need for IHSS services, and will result in the deprivation of

21  services to individuals with mental disabilities, even if they have the same level of need as

22  individuals with physical disabilities who are not deprived of IHSS services.

23     196.    Defendants' actions violate Section 504.

24
## FIFTH CLAIM FOR RELIEF
**(Defendants Director Wagner and Director Maxwell-Jolly)**
25
**Medicaid Act Comparability Requirement**

26     197.    Plaintiffs reallege and incorporate herein by reference each and every allegation and

27  paragraph set forth previously.

28

34

1    198.    Under federal Medicaid requirements, states must provide comparable benefits, i.e.,

2    benefits that are equal in "amount, duration and scope," to all categorically needy Medicaid

3    beneficiaries. 42 U.S.C. § 1396a (a)(10)(B)(ii); 42 C.F.R. § 440.240(a), (b)(1). Categorically

4    needy Medicaid beneficiaries are beneficiaries who, in most cases, receive cash public assistance to

5    meet basic needs.

6    199.    The Medicaid Act also requires states to provide comparable benefits to all

7    medically needy Medicaid beneficiaries. 42 U.S.C. § 1396a (a)(10)(B)(ii); 42 C.F.R. §§ 440.240

8    (b)(1). Medically needy Medicaid beneficiaries are beneficiaries who do not receive cash public

9    assistance because they have income or resources in excess of the requirements for receipt of such

10   assistance, but who nevertheless meet categorical requirements for such assistance, e.g., they are

11   over age 65, blind, or disabled.

12   200.    States may provide benefits to the medically needy that are less in amount, duration

13   and scope than benefits to the categorically needy, but California has not elected to do so.

14   201.    Therefore (with certain exceptions for some groups not relevant here), California

15   must provide benefits under its Medicaid program that are equal in amount, duration and scope to

16   all eligible beneficiaries. The only permissible basis for distinguishing among such beneficiaries is

17   differing levels of need.

18   202.    Pursuant to ABX4 4, Defendants will provide IHSS services to some Medicaid

19   recipients, while denying the same services to other IHSS recipients who have comparable needs,

20   based on an FI Score that is not a rational measure of need.

21   203.    Pursuant to ABX4 4, Defendants will provide domestic and related IHSS services to

22   some Medicaid recipients, while denying the same services to other IHSS recipients who have

23   comparable needs, based on a functional rank that is not a rational measure of need.

24   204.    Therefore, ABX4 4 violates Medicaid's comparability requirement, 42 U.S.C. §

25   1396a(a)(10)(B)(i).

26   205.    Defendants' actions deprive Plaintiffs and members of the Plaintiff Class of rights,

27   privileges or immunities secured to them by the Constitution of the United States, in violation of 42

28   U.S.C. § 1983, and are preempted by the Supremacy Clause of the U.S. CONST., art. IV.

35

1

2

**SIXTH CLAIM FOR RELIEF**
**(Defendants Director Wagner and Director Maxwell-Jolly)**
**Medicaid Act Sufficiency Requirement:**
**Loss of Domestic and Related Services Subclass Only**

3

206.     Plaintiffs reallege and incorporate herein by reference each and every allegation and

4

paragraph set forth previously.

5

207.     Under federal Medicaid requirements, states must provide "sufficient" benefits.

6

That is, "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its

7

purpose." 42 C.F.R. § 440.230(b).

8

208.     By terminating or reducing IHSS domestic and related services to individuals for

9

whom such services have been deemed necessary pursuant to an individual service plan approved

10

by the state, ABX4 4 will result in insufficient services to fulfill the purpose of the IHSS benefit.

11

209.     ABX4 4 is inconsistent with the federal law and preempted by the Supremacy

12

Clause of the U.S. CONST., art. IV.

13

14

**SEVENTH CLAIM FOR RELIEF**
**(Defendants Director Wagner and Director Maxwell-Jolly)**
**Medicaid Reasonable Standards Requirement**

15

16

210.     Plaintiffs reallege and incorporate herein by reference each and every allegation and

17

paragraph set forth previously.

18

211.     Federal Medicaid law requires participating states to establish reasonable standards,

19

consistent with the objectives of the Medicaid Act, for determining the extent of covered services.

20

*See* 42 U.S.C. § 1396a(a)(17).

21

212.     Pursuant to ABX4 4, Defendants will cover IHSS services for some Medicaid

22

recipients, while denying the same services to other IHSS recipients who have comparable needs,

23

and will utilize FI Scores and/or functional ranks that do not provide a fair or reasonable measure

24

of need for services,

25

213.     ABX4 4 is inconsistent and in conflict with the reasonable standards requirements

26

of the federal Medicaid Act, 42 U.S.C. §1396a(a)(17), and interpretive federal guidelines, and is

27

thus preempted by the Supremacy Clause of the United States Constitution, art. IV.

28

36

Class Action Complaint for Injunctive and Declaratory Relief

1
2
3

**EIGHTH CLAIM FOR RELIEF**
**(Defendants Director Wagner and Director Maxwell-Jolly)**
**Medicaid Act, Early and Periodic Screening, Diagnostic and Treatment**
**(EPSDT) Services, 42 U.S.C. § 1396 et seq: Child Subclass Only**

4

214. Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

5
6
7

215. Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") for children and youth under age 21 is a mandatory Medicaid service. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).

8
9
10

216. Thousands of IHSS recipients in California are under the age of 21 and are protected by the EPSDT mandate, which requires the State to provide them with the services that are medically necessary to ameliorate their conditions.

11
12
13
14

217. Under EPSDT, States must provide or arrange for periodic medical screens that include a comprehensive health and developmental/mental health history and assessment, unclothed physical examination, immunizations, laboratory testing, and health education. 42 U.S.C. §§ 1396a(a)(43), 1396d(r)(1).

15
16
17

218. States must provide for "arranging for (directly or through referral to appropriate agencies, organizations or individuals) corrective treatment the need for which is disclosed by" a periodic or inter-periodic screen. 42 U.S.C. § 1396a(a)(43)(C).

18
19
20
21
22

219. EPSDT treatment must include vision, dental and hearing services and "other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section [42 U.S.C. § 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

23
24
25

220. Under EPSDT, States must inform all Medi-Cal eligible persons in the State who are under age 21 of the availability of early and periodic screening "and treatment services as described in section 1396d(r). . . ." 42 U.S.C. § 1396a(a)(43)(A).

26
27
28

221. For each child under age 21 who has been approved for IHSS services through the Medi-Cal Personal Care Services program, the State has previously made an individualized determination that the current level of personal care services are necessary to ameliorate the child's

37

1  condition. The reductions and terminations required by ABX4 4 have not been made on the basis

2  of an individualized determination that these services are no longer necessary, but for purely

3  budgetary reasons.

4  222.  On information and belief, Defendants intend to subject children under the age of 21

5  receiving personal care services from non-legally responsible relatives to the same reductions and

6  terminations as adults, in violation of the EPSDT mandates and the requirements of federal

7  Medicaid law.

8  223.  EPSDT includes a notice and informing mandate. State EPSDT programs are

9  required to effectively inform individuals of the screening and treatment services available under

10 the program. 42 U.S.C. § 1396a(a)(43)(A); 42 C.F.R. §441.56(a). Under this informing mandate,

11 Defendants must inform all children of the full range of EPSDT services, including personal care

12 services, that are available to them when needed to correct or ameliorate their physical and/or

13 mental conditions.

14 224.  On information and belief, Defendants do not intend to inform children receiving

15 personal care services from a legally-responsible parent provider through the IHSS Plus waiver of

16 the availability of uninterrupted personal care services from a non-parent provider through the

17 EPSDT program.

18 225.  Defendants' actions, as described above, fail to provide for Medi-Cal-eligible

19 children to obtain coverage of personal care services as required by the EPSDT provisions of the

20 Medicaid Act. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(A), (C), 1396d(a)(4)(B), 1396d(r)(5),

21 enforceable by Plaintiffs pursuant to 42 U.S.C. § 1983.

22
**NINTH CLAIM FOR RELIEF**
**(Defendants Director Wagner and Director Maxwell-Jolly)**
23
**Medicaid: ARRA: Termination of Benefits Subclass Only**

24 226.  Plaintiffs reallege and incorporate herein by reference each and every allegation and

25 paragraph set forth previously.

26 227.  In 2009, Congress passed the ARRA or Stimulus Act, Pub. Law No. 111-5 (2009),

27 which included a temporary increase in the Federal Medical Assistance Percentages, which is the

28

38

1  level of federal financial participation in state Medicaid programs. *See* Title V of ARRA, §§5000,
2  *et seq.*

3  228. This increased federal matching assistance is meant to "protect and maintain State
4  Medicaid programs during a period of economic downturn, including by helping avert cuts to
5  provider payment rates and benefits or services, and to prevent constrictions of income eligibility
6  requirements for such programs. . . ." ARRA, § 5000, Pub. L. No. 111-5 (2009).

7  229. States are ineligible for the ARRA's increased federal match if eligibility standards,
8  methodologies, or procedures under their Medicaid state plan (including any waivers) are more
9  restrictive than the eligibility standards, methodologies, or procedures under such plan (or waiver)
10  as in effect on July 1, 2008. ARRA § 5000(f)(1).

11  230. The State of California has received increased federal matching assistance funds and
12  plans to continue to receive such funds.

13  231. By making ineligible for IHSS individuals with FI Scores of less than 2.0, ABX4 4
14  will result in eligibility standards, methodologies, or procedures under the California Medicaid plan
15  and/or waivers that are more restrictive than the eligibility standards, methodologies, or procedures
16  that were in effect on July 1, 2008.

17  232. ABX 4 therefore violates the ARRA, and is preempted by the Supremacy Clause of
18  the U.S. CONST., art. IV.

19  **REQUEST FOR RELIEF**

20  WHEREFORE, Plaintiffs pray that the Court order the following relief and remedies on
21  behalf of themselves and all others similarly situated:

22  a) Assume jurisdiction over this action and maintain continuing jurisdiction until
23  Defendants are in full compliance with every order of this Court;

24  b) Certify this action as a class action and appoint the individual named Plaintiffs as
25  Class representatives;

26  c) Declare that ABX4 4 and Defendants DHCS and CDSS' policies, practices, acts and
27  omissions as set forth above violate the American with Disabilities Act and Section 504 of the
28  Rehabilitation Act;

39

1         d)      Declare that ABX4 4 and Defendant Wagner and Maxwell-Jolly's policies,

2 practices, acts and omissions as set forth above violate the Medicaid Act (comparability,

3 sufficiency, reasonable fair hearing, EPSDT, and ARRA provisions), the Due Process Clause of the

4 United States Constitution, and 42 U.S.C. § 1983, and are preempted by the Supremacy Clause.

5         e)      Grant a temporary restraining order, preliminary and permanent injunction enjoining

6 Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert

7 or participation with them from implementing the provisions of ABX4 4 that amended Sections

8 12309(e) and 12309.2 of the Welfare and Institutions Code to make ineligible for IHSS services

9 recipients with FI Scores of less than 2.0 and to make ineligible for domestic and related services

10 individuals with functional ranks of less than 4 for those services.

11         f)      Award the Plaintiffs the costs of this action and reasonable attorneys' fees pursuant

12 to 20 U.S.C. § 794a; 42 U.S.C. §§ 1988, 12133, 12205; and as otherwise may be allowed by law.

13 All such other and further relief as the Court deems to be just and equitable.

14

15 Dated: October 1, 2009                 Respectfully Submitted,

16

17                  By:    *Melinda Bird* /Sue by permission

18                MELINDA BIRD (SBN 102236)
               MARILYN HOLLE (SBN 61530)

19                DEBORAH DORFMAN (CRLSA No. 801060)
               DISABILITY RIGHTS CALIFORNIA

20                LOS ANGELES REGIONAL OFFICE
               3580 Wilshire Blvd., Ste. 902

21                Los Angeles, CA 90010
               Telephone: (213) 427-8747

22                Facsimile: (213) 427-8767
               Melinda.bird@disabilityrightsca.org

23                Debbie.dorfman@disabilityrightsca.org
               marilyn@disabilityrightsca.org

24                SUJATHA JAGADEESH BRANCH (SBN 166259)

25                DISABILITY RIGHTS CALIFORNIA
               SACRAMENTO REGIONAL OFFICE

26                100 Howe Street, Suite 235 N
               Sacramento, CA 95825

27                Telephone: (916) 488-9950
               Facsimile: (916) 488-9960

28                Sujatha.branch@disabilityrightsca.org

DARA L. SCHUR (SBN 98638)
FREDERICK P. NISEN (SBN 184089)
JUNG PHAM (SBN 251232)
DISABILITY RIGHTS CALIFORNIA
BAY AREA REGIONAL OFFICE
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201
Dara.schur@disabilityrightsca.org
Fred.nisen@disabilityrightsca.org
Jung.pham@disabilityrightsca.org

PAULA PEARLMAN (SBN 109038)
SHAWNA PARKS (SBN 208301)
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-1031
Facsimile: (213) 736-1428
Paula.pearlman@lls.edu
Shawna.parks@lls.edu

CHARLES WOLFINGER (SBN 63467)
LAW OFFICE OF CHARLES WOFLINGER
4655 Cass Street # 314
San Diego, CA 92109
Telephone: (858) 272-8115
Facsimile: (858) 270-3960
Cw@charleswolfinger.com

JANE PERKINS (SBN 104784)
NATIONAL HEALTH LAW PROGRAM
211 N. Columbia Street
Chapel Hill, NC 27514
Telephone: (919) 968-6308
Facsimile: (919) 968-8855
perkins@healthlaw.org

ANNA RICH (SBN 230195)
NATIONAL SENIOR CITIZEN LAW CENTER
1330 Broadway, Suite 525
Oakland, CA 94612
Telephone: (510) 663-1055
Facsimile: (510) 663-1051

*Attorneys for Individual Named Plaintiffs V.L., David
Oster, Willie Beatrice Sheppard, C.R., and the
Plaintiff Class*

41

1

2          By:

3              STEPHEN P. BERZON (SBN 46540)

4              EVE H. CERVANTEZ (SBN 164709)
               STACEY M. LEYTON (SBN 203827)

5              PEDER J. THOREEN (SBN 217081)
               Altshuler Berzon LLP

6              177 Post Street, Suite 300
               San Francisco, California 94108

7              Telephone: (415) 421-7151
               Facsimile: (415) 362-8064

8              sberzon@altshulerberzon.com
               ecervantez@altshulerberzon.com

9              sleyton@altshulerberzon.com
               pthoreen@altshulerberzon.com

10
               *Attorneys for Plaintiffs SEIU-UHW, SEIU-ULTCW,*
11             *SEIU Local 521, SEIU California State Council,*
               *UDW, and CUHW*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint for Injunctive and Declaratory Relief