**United States District Court**
For the Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4

5                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

6
                                              No. C 09-04668 CW
7   V.L., et al.,

                                              ORDER GRANTING IN
8            Plaintiffs,                       PART PLAINTIFFS'
                                              MOTION FOR CIVIL
9       v.                                    CONTEMPT SANCTIONS
                                              AND ENFORCING
10  JOHN A. WAGNER, Director of the           INJUNCTION
    California Department of Social
11  Services; DAVID MAXWELL-JOLLY,
    Director of the California Department
12  of Health Care Services; CALIFORNIA
    DEPARTMENT OF HEALTH CARE SERVICES;
13  CALIFORNIA DEPARTMENT OF SOCIAL
    SERVICES,
14
             Defendants.
15  _____/

16
         On October 19, 2009, the Court enjoined and restrained
17
    Defendants "from implementing the provisions of ABX4 4 that amended
18
    Sections 12309(e) and 12309.2 of the California Welfare and
19
    Institutions Code to terminate from eligibility for [In-Home
20
    Supportive Services] those recipients with Functional Index (FI)
21
    Scores of less than 2.0 and to eliminate domestic and related
22
    services for recipients with functional ranks of less than 4 for
23
    those services."  On October 23, 2009, the Court explained the
24
    reasons for the injunction and delineated the terms of the
25
    injunction in more detail.  In this motion, Plaintiffs assert that
26
    Defendants violated the injunction by: (1) terminating or reducing
27
    services for almost 3,000 individuals with FI Scores under 2.0 or
28

functional ranks under 4; (2) failing to take all steps and commit all resources necessary to ensure that none of these otherwise eligible individuals would be denied eligibility for, or terminated from, receipt of IHSS services or domestic and related IHSS services; (3) failing to notify providers who were incorrectly notified that their recipients' IHSS hours had been terminated or reduced that they should continue to work previously-authorized hours; and (4) failing to serve and file a declaration of compliance demonstrating actual compliance with the Court's Preliminary Injunction by Thursday, October 29, 2009.  Defendants assert that they "are, and at all times have been, in compliance with the preliminary injunction."  Opposition at 1.  The motion was heard on November 19, 2009.  Having considered oral argument and all of the papers filed by the parties, the Court finds clear and convincing evidence that Defendants are in violation of its orders. The Court enters further orders and coercive sanctions to remedy the non-compliance and compel prospective compliance.

BACKGROUND

    The Court issued its initial injunction, quoted above, on October 19, 2009.  Thereafter, in the course of briefing the details of the further injunction that would issue, Plaintiffs warned that, unless corrective measures were taken, time-cards would be sent between November 6 and 10, 2009 that would incorrectly inform providers that their clients' eligibility for services would be terminated or reduced.  This would lead the providers to fail to perform needed services for recipients.  For instance, on October 20, 2009, a declaration submitted by Plaintiffs stated,

> Although the IHSS terminations and reductions are scheduled to go into effect on November 1, 2009, the provider timesheets that show consumers' post-November 1 authorized hours will not be sent until sometime around November 6-10, 2009. So long as the changes are made before then, consumers' IHSS services should continue uninterrupted, and confusion among providers should be avoided.

Nicco Decl. in Support of Plaintiffs' Additional Response Re: Implementation Issues at ¶ 5. Further, on October 22, Plaintiffs noted:

> There appears to be a very real chance here that some providers will receive erroneous timesheets or paychecks, and, believing that they have been fired or had hours reduced by operation of state law, fail to provide necessary IHSS services to a recipient. The only way to mitigate the potential for errors is to send notices directly to providers, so that they keep working and rendering IHSS services even if Defendants send them an erroneous timesheet or paycheck.

Plaintiffs' Supplemental Response Re: Implementation Issues at 1. Despite these warnings, Defendants resisted sending notices to providers. The Court did not order the notices, relying on Defendants to obey its order not to terminate the recipients' services.

On October 23, 2009, the Court further detailed the terms of the injunction as follows:

> . . . to the extent that Defendants have already taken actions to eliminate eligibility for IHSS services for individuals with an FI Score under 2, or to eliminate eligibility for domestic and related services for individuals with functional ranks under 4, Defendants shall take all steps and commit all resources necessary to ensure that no otherwise eligible individual is denied eligibility for, or terminated from, IHSS, solely on the basis of an FI Score under 2.0, and that no otherwise eligible individual is denied eligibility for, or terminated from, receipt of domestic and related IHSS services, solely on the basis of a functional rank under 4. Defendants shall further ensure that there is no delay in paying IHSS providers for services rendered to individuals whom Defendants had planned to terminate or reduce IHSS eligibility on the basis of an FI score under 2.0 or a functional rank under 4. Defendants shall

3

determine the method of implementing the preliminary
injunction that will be the least expensive in the
aggregate to the county and state taxpayers.  Defendants
may require the counties to re-enter manually the
information about individual recipients whose IHSS
services were scheduled to be terminated or reduced
because their FI Scores were below 2.0 or their functional
ranks for a particular domestic or related service were
below 4 only if that is less expensive than doing it
themselves.  The State must reimburse the counties for
their expenses.  The State may instead restore the system
back-up and re-enter the changes made in the interim.

To ensure that all relevant parties are aware of the
Court's injunction, Defendants shall further rescind any
directions or notices issued to any person or entity for
the termination or reduction of IHSS benefits on the basis
of an FI Score under 2 or functional ranks under 4; and
shall notify all persons and entities that have received
such directions or notices that such IHSS benefits will
not be terminated or reduced.  Defendants shall mail a
notice to all IHSS recipients informing them, in language
agreed upon by the parties, that the previously announced
terminations or reductions in IHSS service will not go
into effect.  Defendants must mail this notice by Tuesday,
October 27.

Defendants shall post a copy of this preliminary
injunction with an explanation of its effect on IHSS
services conspicuously on its website by the close of
business on Monday, October 26, 2009. Defendants shall
serve and file a declaration of compliance by Thursday,
October 29, 2009.

After the injunction issued, Plaintiffs contacted Defendants

to discuss the timely implementation of the Court's order.  On

October 26, Plaintiffs asked Defendants' counsel how Defendants

planned to track counties' work to make sure it was completed

before new and possibly incorrect time cards were issued to

providers.  Cervantez Decl. ¶ 3.  Defendants responded by assuring

Plaintiffs that the records would be updated by November 1 or soon

thereafter, and that there would be no disruption in services.  Id.

at ¶ 5.  On October 29, Plaintiffs sent an email to Defendants

following up on these issues:

A concern has been raised that, if data entry is not
completed in time, or there are errors in the data entry,
providers may receive incorrect timesheets with their

4

1    paycheck for the October 16-31 pay period.  Please verify
2    when the first of these time sheets will be sent out, and
     let us know what your clients' plans are for dealing with
3    providers who receive incorrect time sheet (i.e. listing
     zero hours or reduced hours for the period November 1-
4    15).  If these time sheets are not corrected, some
     providers may incorrectly believe they have been
5    terminated or had authorized hours reduced, and not work
     the full complement of hours needed by the consumers.

6    <u>Id.</u>, Exh. A.

7        The same day, Defendants filed a "Certificate of Compliance"

8    that stated: (1) on October 22, Defendants ordered the counties to

9    reenter manually the information about individual recipients whose

10   IHSS services were scheduled to be terminated or reduced; (2) as of

11   noon on October 28, the counties had restored 67,738 records,

12   leaving 50,048 files still to be restored; (3) "Defendants have

13   asked the counties to take all steps necessary to ensure that all

14   117,786 Impacted Recipients' files will be updated before November

15   1, 2009, and the counties appear to be on pace to do so . . .

16   Defendants have determined that having the counties enter this

17   information is the only option available to make all of the

18   necessary changes before November 1, 2009 (or as soon thereafter as

19   possible in the event that the counties cannot complete the changes

20   before that date)"; and (4) "Defendants will file a supplemental

21   certification of compliance after all Impacted Recipients' files

22   have been updated."

23       On October 30, Defendants responded Plaintiffs' October 29

24   email by noting that they did not know of any problems with

25   implementing the injunction, but they did not address the specific

26   concerns raised in the email about provider time-cards.  Plaintiffs

27   sent similar emails to Defendants on November 2, 3, 4 and 6.

28   Defendants responded to these emails by reporting the updated

number of IHSS recipients restored, but they failed to address the time-card issue.

Nonetheless, and despite the warnings and pleas from Plaintiffs' counsel, between November 6 and 10, Defendants proceeded to mail out the incorrect time-cards to the 6,000 providers of service[1] to almost 3,000 IHSS recipients, as Plaintiffs predicted they would.  These inaccurate time-cards list the hours the providers are authorized to work for the period from November 1 to 15.  Because the records for these recipients have not been restored, these providers' time-cards show zero hours if the providers' recipients were slated for termination, or show a reduced number of authorized hours for domestic or related services.

For instance, on November 6, 2009, along with a time-card, Defendants issued a direct deposit notice to one such provider for her services between October 16 and October 31, which stated "RECORDS INDICATE THAT YOUR ELIGIBILITY ENDED 10/31/2009."  Julie Belzman Decl., Exh. A (upper case in original).  This meant that, after October 31, this provider would believe that she was not eligible to be paid for her services to her assigned IHSS recipient.

As of November 9, the date Plaintiffs filed this motion, Defendants reported that (1) the counties had not updated the files for 2,829 IHSS recipients, (2) they had not identified which counties had not updated all of their files and (3) they

_____

[1]At a hearing on November 20, 2009, Defendants represented that over 6,000 providers supply services for these approximately 3,000 recipients.  Many recipients have more than one provider.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    anticipated that most files would be updated by November 15, but

2    did not have a specific estimated date for completion.  Bird Decl.

3    ¶ 4.

4        Defendants have not since notified the 6,000 providers for

5    these 3,000 IHSS recipients that their time-cards erroneously state

6    that the recipients are eligible for no services, or for reduced

7    services.  Plaintiffs fear that, as a result, providers will likely

8    cease or reduce services to those recipients.  Plaintiffs also

9    assert that providers will likely receive incorrect paychecks, in

10   violation of the injunction, if recipients' files are not updated

11   by the time that paychecks are issued or if providers fail to claim

12   the hours that they actually worked but believe were not authorized

13   to work.

14       On November 19, 2009, the day of the hearing on this motion,

15   Defendants filed a supplemental certificate of compliance, which

16   stated that, as of that day, the counties had completed the updates

17   to the files of 116,901 of the 117,828 impacted IHSS recipients,

18   leaving 927 files left to be updated.

19                          LEGAL STANDARD

20       A district court has the inherent authority to enforce

21   compliance with its orders through a civil contempt proceeding.

22   International Union, UMWA v. Bagwell, 512 U.S. 821, 827-28 (1994).

23   A contempt sanction is considered civil if it "is remedial, and for

24   the benefit of the complainant."  Id.  A contempt fine is

25   considered civil and remedial if it either "coerce[s] the defendant

26   into compliance with the court's order, [or] . . . compensate[s]

27   the complainant for losses sustained."  United States v. United

28   Mine Workers, 330 U.S. 258, 303-304 (1947).

7

United States District Court
For the Northern District of California

If a person disobeys a specific and definite court order, he or she may properly be held in contempt.  In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987).  A party disobeys a court order when it "fails to take all the reasonable steps within [its] power to insure compliance with the [court's] order."  Id. (citation omitted).

In deciding whether to impose a civil contempt sanction, a district court should consider the following factors:  the harm from non-compliance; the probable effectiveness of the sanction; the contemnor's financial resources and the burden the sanctions may impose; and the contemnor's willfulness in disregarding the court's order.  United Mine Workers, 330 U.S. at 303-304.

The moving party must demonstrate by clear and convincing evidence that the contemnor violated the court's order.  In Re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993) (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)); Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 466 (9th Cir. 1989).  The burden then shifts to the respondents to demonstrate that they have performed "'all reasonable steps within their power to insure compliance' with the court's orders."  Stone v. City and County of San Francisco, 968 F.2d 850, 856 (9th Cir. 1992), cert. denied, 506 U.S. 1081 (1993) (quoting Sekaquaptewa v. MacDonald, 544 F.2d 396, 404 (9th Cir. 1976)).  A party may escape contempt by demonstrating that he or she is unable to comply with the court's order.  In re Crystal Palace, 817 F.2d at 1365.  In order to prevail on this defense, the alleged contemnor must submit evidence to support it.  Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 984 (11th Cir. 1986)

(contemnor's financial statements were inadequate because they were incomplete, unverified, not based on independent audits, and not accompanied by current tax returns).

DISCUSSION

Defendants argue that they are not in violation of the injunction because the Court did "not set any specific deadline at all" for the restoration of IHSS recipients' records.  Opp. At 6. The Court ordered Defendants to file a certificate of compliance on October 29, 2009.  Furthermore, the Court ordered Defendants to "take all steps and commit all resources necessary to ensure that no otherwise eligible individual is denied eligibility for or terminated from IHSS on the basis of FI Score or functional rank," and to "ensure that there is no delay in paying IHSS providers for services rendered to individuals" who would have been affected by ABX4 4.  Oct. 23 Preliminary Injunction at 30.

Defendants have failed to ensure that no IHSS recipients were denied eligibility for services based on their functional ranks or FI Scores.  As of November 9, 2009, almost 3,000 recipients were recorded as ineligible for some or all services.

In a number of instances, the counties' records showed that they had completed the process of restoring eligibility in the recipients' files, but the State's data told Defendants otherwise. For instance, Defendants note that they "received a live update from Riverside County on November 10th that they had completed all of their data entry."  Romero Decl. ¶ 4.  However, as of November 12, the State's records reflected that Riverside County had not restored the records for forty-four terminated recipients and sixty-two recipients scheduled to lose domestic and related

9

services.  Id., Exh. C.  Despite this discrepancy, Defendants failed to contact the county and address the issue.

Similarly, in San Francisco, the county believed it had restored the records of all of its IHSS recipients by October 30. Nicco Decl. ¶¶ 2, 6-7.  Yet, the State's records on November 12 showed that San Francisco had failed to restore data for 118 recipients.  Romero Decl., Exh. C.  No State official notified San Francisco of this discrepancy, which it learned of from Plaintiffs' counsel.

There may be other counties that are similarly misled into believing that the files of all of their IHSS recipients have been updated.  Such discrepancies in the data have serious consequences for IHSS recipients.  Until their records are properly updated, these elderly and disabled individuals will appear to be ineligible for IHSS services.  Because Defendants are not taking adequate steps to comply, the Court must intervene to ensure that IHSS services for these recipients will not be terminated in violation of the Court's injunction.

Further, Defendants were specifically and repeatedly warned, and thus they knew that, unless they took some affirmative action, incorrect time-cards would be issued, erroneously telling providers that their hours for November 1 through 15 would be reduced or eliminated.  Nonetheless, Defendants failed to take the "necessary" steps to "ensure" that these erroneous time-cards would not be mailed.

The only way providers know how many hours they are authorized to work for a particular IHSS recipient during a given time period is by checking how many hours are listed on the time-card that the

United States District Court
For the Northern District of California

State sends.  Providers "pay close attention to the authorized hours shown on the time-cards they receive from the State" and are likely to believe that only the hours listed on those cards are authorized and to work only those hours.  McDevitt Dec. ¶¶ 3-9, 13.

Defendants claim that a provider "confused by an incorrect time card could clear up any confusion simply by speaking with his/her recipient employer, by contacting the county, or by contacting the provider union."  Opp. At 8.  However, many IHSS recipients are frail and disoriented elders or individuals with cognitive or mental impairments who may not be able to communicate effectively with their providers.  Further, providers will be receiving these time-cards after recipients have received notice of the Court's injunction.  Thus, providers and recipients will likely be confused into thinking that the hours have been eliminated or reduced for some reason other than ABX4 4.  McDevitt Dec. ¶¶ 14, 17-18.  Moreover, there is no assurance that counties or the unions will be able to address these concerns adequately.

Defendants have also failed to obey the Court's order that they "rescind any directions or notices issued to any person or entity for the termination or reduction of IHSS benefits on the basis of an FI Score under 2 or functional ranks under 4; and shall notify all persons and entities that have received such directions or notices that such IHSS benefits will not be terminated or reduced."  Oct. 23 Preliminary Injunction at 30-31.  As noted above, Defendants sent incorrect time-cards declaring reduced or eliminated authorized hours to over 6,000 IHSS providers for almost 3,000 recipients.  These time-cards constituted "notices issued to any person or entity" for the termination or reduction of IHSS

11

United States District Court
For the Northern District of California

benefits as described in the Court's injunction.  The injunction required that Defendants rescind any such notices and notify such persons and entities that "such IHSS benefits will not be terminated or reduced."  Defendants did not do so.  Thus, Defendants violated the notice provision of the injunction by failing to rescind and send out notices correcting their contumacious mailing of these incorrect time-cards.

For these reasons, the Court finds clear and convincing evidence that Defendants are in contempt of Court for violating its preliminary injunctions issued on October 19 and 23.  However, the Court declines to adopt Plaintiffs' recommendation to sanction Defendants $250,000 for every day that they continue to be in violation of the injunction.  Although Defendants' actions are reprehensible, in consideration of the current budget crisis, fining the State in this manner and at this time is not warranted.

At the November 19 hearing, the Court ordered the following to enforce its injunction and to remedy Defendants' contempt of Court:

(1) By November 20, Defendants shall have sent to Plaintiffs and the appropriate counties the names and any other identifying information of all recipients whose records have not yet been restored, instructed counties to ensure that all such recipients have had their records restored, and instructed counties that any time-card submitted that generates an error message because either no hours or fewer hours are authorized than those claimed by the provider must be double-checked against the list of recipients and providers affected by the Court's injunction, and data corrected in the files as necessary.

(2) By November 20, Defendants shall have begun calling each

county to confer in real time about their progress in updating the files;

(3) By November 20, Defendants shall have provided Plaintiffs' counsel with immediate discovery of the names and contact information of all 3,000 recipients whose records had not been restored by November 5, 2009 and the names and contact information of their 6,000 providers who will receive misleading time-cards.[2] These are members of the class that Plaintiffs and their attorneys seek to represent.  This information may be used only by (1) Plaintiffs' counsel to respond to inquiries from IHSS recipients in order to assure them that their IHSS services have not been eliminated or reduced and (2) Plaintiff unions to contact union-member IHSS providers and field inquiries from any providers to assure them that their authorized hours to provide IHSS services have not been eliminated or reduced.

(4) By November 23, at the State's expense, Plaintiffs' counsel shall have sent all 6,000 providers who received incorrect time-cards a supplemental time-card and a notice, informing providers that these time-cards were erroneous, that providers should continue to work and will be paid for the previously authorized hours, that providers should submit a supplemental time-card for any hours worked but not recorded on a previously submitted time card or worked in a later pay period to make up for hours not worked due to the incorrect time cards, and how providers can request a supplemental paycheck.  These notices shall contain

---

[2]On November 20, 23 and 24, Defendants admitted that they had not provided this discovery and asked the Court to reconsider and to stay its order.  The Court orally denied the motions for reconsideration and to stay.

United States District Court
For the Northern District of California

substantially the same language as that set forth in the Appendix
to the proposed order submitted by Plaintiffs attached to their
reply brief.   The notices shall be in English, Spanish, Chinese,
Hmong, Armenian, Russian and Vietnamese.   The Court authorized
Plaintiffs' counsel to arrange for the mailing of this notice
because Defendants professed to be unable to do so in less than a
week's time, which would have delayed notification past the
Thanksgiving holiday.   On November 25, Defendants shall send a copy
of this notice and a copy of a blank supplemental time-card to all
counties along with an agreed-upon explanation of the procedures
they must follow.

(5) By November 23, Defendants shall have established a toll-
free telephone number staffed by State employees to answer
questions or concerns about recipients' and providers' eligibility;

The Court further orders Defendants to:

(1) Update manually by November 25, 2009 any files that have
still not been updated.

(2) Issue supplemental checks within four business days to any
providers who were not paid for authorized hours that they worked
in November, 2009, because of the erroneous time-cards they
received or the State's failure to restore the eligibility of
recipients for whom they provide services;

(3) Pay all reasonable attorneys' fees and costs incurred by
Plaintiffs in bringing the instant motion for contempt, including
the costs of the mailing ordered above.   Within thirty days of this
order, Plaintiffs' counsel shall submit an application to the Court
documenting their reasonable attorneys' fees and costs incurred in
connection with this motion, and a proposed order.

14

1    (4) Appear in Court or by telephone daily as the Court

2 requires to make reports as to the status of their compliance with

3 the Court's October 19 and 23 injunctions and the instant Order,

4 until they are in full compliance with the terms of the injunction

5 and have submitted a supplemental certificate of compliance so

6 verifying.

7    IT IS SO ORDERED.

8 Dated: 11/25/09
                                        _____
9                                       CLAUDIA WILKEN
                                        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

15