**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID OSTER, et al.,                              No. C 09-4668 CW

      Plaintiffs,                            ORDER GRANTING
                                                  PLAINTIFFS'
   v.                                         REQUEST FOR A
                                                  PRELIMINARY
WILL LIGHTBOURNE, Director of the                 INJUNCTION
California Department of Social                    (Docket No. 328)
Services; TOBY DOUGLAS, Director
of the California Department of
Health Care Services; CALIFORNIA
DEPARTMENT OF HEALTH CARE
SERVICES; and CALIFORNIA
DEPARTMENT OF SOCIAL SERVICES,

      Defendants.
_____/

    This case concerns the validity of ABX4 4, a law passed in

July 2009 that tightens the eligibility criteria for participants

in California's In-Home Supportive Services (IHSS) Program, and SB

73, a more recently enacted law that also aims to cut the IHSS

program, although in a different way.  Plaintiffs are IHSS

recipients, and unions that represent IHSS providers.  On October

19, 2009, this Court entered a preliminary injunction to block

implementation of ABX4 4, followed on October 23, 2009 by a

written opinion explaining the grounds for the injunction.  On

December 1, 2011, Plaintiffs moved for a temporary restraining

order and a preliminary injunction barring implementation of SB

73.  Having considered all of the parties' submissions and oral argument, the Court grants Plaintiffs' request for a second preliminary injunction.

BACKGROUND

The Court's 2009 opinion provides a detailed explanation of the facts underlying this action.  The present order briefly summarizes the facts relevant to the pending request for a preliminary injunction.

The IHSS program is part of California's Medi-Cal program, which provides medical services to eligible beneficiaries and is supported through a combination of state, federal and county funding.  Federal funds are provided through the Medicaid Act. The IHSS program provides supportive services to the "aged, blind, or disabled persons . . . who are unable to perform the services themselves and who cannot safely remain in their homes or abodes of their own choosing unless these services are provided."  Cal. Welf. & Inst. Code § 12300(a).  At the time the present motion was filed, there were 440,000 IHSS recipients.  Approximately sixty percent of IHSS recipients are senior citizens.

The Manual of Policies and Procedures (MPP) for Defendant California Department of Social Services (CDSS) requires "assistance to those eligible aged, blind and disabled individuals who are unable to remain safely in their own homes without this assistance."  MPP § 30-700.1.  The MPP also states that a particular service will not be authorized unless the social worker

evaluating the individual "has determined that the recipient would not be able to remain safely in his/her own home without IHSS" and "[p]erformance of the service by the recipient would constitute such a threat to his/her health/safety that he/she would be unable to remain in his/her own home."  Id. § 30-761.13-14.

Prior to the enactment of ABX4 4 and SB 73, the CDSS had developed and implemented a Uniformity Assessment System to ensure that IHSS recipients with comparable needs for assistance receive comparable services.  The tool defined ranks of one to five for social workers to use in rating elderly or disabled individuals' functional abilities in fourteen areas: housework; laundry; shopping and errands; meal preparation and clean up; mobility inside the residence; bathing and grooming; dressing; bowel, bladder and menstrual care; transfer from one position to another; eating; respiration; memory; orientation; and judgment.  The parties refer to the rating for each category as a "functional rank."  Rank one, the highest functional level, indicates that a recipient is able to function independently in that category, without human assistance although perhaps with difficulty.  Rank two applies if a recipient is able to perform the function, but needs verbal assistance, such as reminders.  Ranks three and four apply if a recipient can perform the function with some or substantial human assistance, respectively, including but not limited to direct physical assistance.  Rank five is applied to a

recipient who cannot perform the function, with or without human assistance.

Social workers are required to assess each recipient's functional rank in the fourteen areas on an individualized basis, only for the purpose of determining with uniformity the number of hours of a particular service a recipient needs.  Time guidelines are provided for each rank for tasks for which IHSS recipients may receive services.  Once it is determined that an IHSS recipients needs a given service to remain safely at home, the number of IHSS hours authorized is determined by the guidelines, unless there is a documented reason for an exception.  MPP § 30-757.1(a)(6).

Nonetheless, the eligibility restrictions implementing ABX4 4 were based on those functional ranks, as well as on a Functional Index (FI) Score, a composite score calculated based on a weighted average of eleven of the recipient's functional rankings, excluding the rankings for the mental tasks of memory, orientation and judgment.  As explained in the 2009 order enjoining implementation of ABX4 4, neither functional ranks nor the Functional Index had ever been used to determine IHSS eligibility.

On June 30, 2011, SB 73 enacted California Welfare and Institutions Code section 12301.07, mandating that the CDSS reduce authorized hours of services for IHSS recipients by twenty percent if, by December 15, 2011, it were forecasted that certain specific revenue targets would not be met.  On November 29, 2011, after it appeared that the revenue targets would not be met, triggering the

**United States District Court**
For the Northern District of California

cuts to the IHSS program, the CDSS issued an All-County Letter (ACL) to inform counties of the requirements under new section 12301.07 and its plan for implementation of the SB 73 mandated cuts.  Declaration of Eileen Carroll, Ex. A.

The implementation plan for SB 73 established in the ACL is as follows.  Certain groups of recipients are exempted from the twenty percent reductions.  The reduction would not be applied to "individuals receiving IHSS who also receive services under one of the State Home and Community Based Services Waivers, including the following: Acquired Immune Deficiency Syndrome (AIDS) Waiver, Home and Community Based Services Waiver for the Developmentally Disabled (HCBS-DD), In-Home Operations (IHO), Multipurpose Senior Services Program (MSSP), and Nursing Facility/Acute Hospital (NF/AH)."  ACL at 2.  These exemptions appear to implement section 12301.07(a)(5), which states that the reduction in IHSS hours "shall not apply to in-home support services recipients who also receive services under Section 9560, subdivision (t) of Section 14132, and Section 14132.99."  Over a thousand individuals are on waiting lists for these programs, but they would not be exempted.[1]

The ACL also announced that recipients who met one of the following criteria were pre-approved for an exemption from the reduction: (1) if the recipient had a functional rank of five for mobility inside; bowel, bladder and menstrual care; transfer, or

---

[1] Plaintiffs' unopposed Third Request for Judicial Notice is granted with respect to Exhibits 11 and 12.

paramedical services authorized for bed sore care; and eating;
(2) the recipient was authorized for 283 hours per month, the
statutory maximum; or (3) the recipient was assessed for
protective supervision.  ACL at 3-4.  Section 12301.07(b) requires
the CDSS and counties to develop a process to allow counties to
"preapprove IHSS Care Supplements described in subdivision (f), to
the extent that the process is permissible under federal law."

The ACL explains that the CDSS will identify, through its
Case Management Information and Payrolling System (CMIPS), all
recipients in the exempt groups, under section 12301.7(a)(5), and
the groups pre-approved for an exemption to the twenty percent
reduction, pursuant to section 12301.07(b).  ACL at 3.  The exempt
and pre-approved recipients would receive an "IHSS Program Notice
to Recipient of Exemption from Reduction in Service Hours."  All
other recipients, who would be subject to the reduction, would
receive a notice of action advising them of the reduction.  ACL at
3.

The ACL sets forth a process by which recipients who receive a
notice of action may request a restoration of all or part of their
reduced hours by submitting an application for the Care Supplement
that SB 73 provided.  The Supplemental Care application requires a
recipient to provide a written explanation of "how the 20-percent
reduction in your authorized service hours would put you at serious
risk of out-of-home placement."  Carroll Dec. at 18.  See also,
Cal. Welf. & Inst. Code § 12301.07(f).  Section 12301.07(c) further

states, "The notice of action informing each recipient who is not preapproved for an IHSS Care Supplement pursuant to subdivision (b) shall be mailed at least 15 days prior to the reduction."

If a recipient submits the Supplemental Care application to the county within fifteen days of receipt of the notice of action, the county shall reinstate the reduced hours pending its determination of whether the recipient would be at serious risk of out-of-home placement as a result of the reduction.  ACL at 6.  If the recipient submits the Supplemental Care application more than fifteen days after the recipient receives the notice of action, the reduction is imposed while the county makes its determination.  Id.

When the county receives a completed application for IHSS Supplemental Care, a worker is required to complete a Supplemental Care Worksheet to decide if the applicant qualifies.  The worksheet purports to determine whether the recipient is "at serious risk of out-of-home placement" as a result of the twenty percent reduction.  Carroll Dec. at 20, Supplemental Care Worksheet, ACL at Attachment H.  Parts A and B of the worksheet outline two different tests to determine whether a recipient has met the standard.  Under Part A, a recipient qualifies as being at serious risk if three or more of the following categories are satisfied.

> 1. Paramedical Services authorized to monitor medical condition and/or give injections
>
> 2. Ranked 4 or 5 for Mobility Inside

United States District Court
For the Northern District of California

　　　　3. Ranked 4 or 5 for Bathing and Grooming

　　　　4. Ranked 4 or 5 for Dressing

　　　　5. Ranked 3, 4 or 5 for Bowel, Bladder and Menstrual
　　　　　 Care, or Paramedical Services authorized for catheter
　　　　　 or colostomy care

　　　　6. Ranked 4 or 5 for Transfer or Paramedical Services
　　　　　 authorized for bed sore care

　　　　7. Ranked 3, 4 or 5 for Eating

　　　　8. Ranked 5 for Respiration

Id.

Alternatively, under Part B of the worksheet, a recipient qualifies as being at serious risk of out-of-home placement if the functional ranks in the categories of memory, orientation and judgment total seven or more. Id. In contrast to the exempt and pre-approved groups, even recipients who are presumptively eligible for a restoration of hours based on Part A or B of the worksheet will receive notice and a reduction of their service hours.

The next portion of the worksheet, Part C, is titled, "IHSS Supplemental Care Request Disposition." Id. Importantly, Part C may only be completed "if recipient/applicant is determined to be at serious risk" of out-of-home placement based on Part A or B. Part C requires the worker to note that the recipient is nonetheless not at serious risk for out-of-home placement because the recipient has changed "the assignment of tasks," has alternative resources to provide specified essential services, or

8

United States District Court
For the Northern District of California

has had the number of hours partially or fully restored. <u>Id.</u> The ACL explains that by changing the assignment of tasks, the use of IHSS hours is prioritized for "the most essential tasks." ACL at 7. However, it is not explained how eliminating the hours for lower priority tasks will alleviate the risk, if even the lower priority tasks are necessary to ensure that the recipient is able to remain safely at home.

Notice of the reduction and the Supplemental Care application process, as described in the ACL, consists of the following mailed items: (1) a one page notice of action, consisting of a single paragraph, (2) a letter intended to explain the reason for the cuts and to inform recipients of their option to seek a restoration of hours through the Supplemental Care application process, (3) the Supplemental Care application and, (4) a form to request a state hearing.

The CDSS has drafted four different versions of the notice of action to account for factors that are not relevant here. All versions of the notice of action include the following language:

> Because of a new state law, your total monthly authorized hours will be reduced by twenty-percent from ###.## to ###.##. (W&IC section 12301.07). See insert for information about the new law.

ACL at 10.

The explanation letter is printed in Arial, a non-serif font, with a font size of less than 14 point. The letter states,

9

**PLEASE READ THIS NOTICE CAREFULLY
IT PROVIDES IMPORTANT INFORMATION ABOUT YOUR IHSS**

Beginning January 1, 2012, the total authorized monthly service hours you get will be reduced by 20-percent. Here's why:

There is a new state law (Welfare and Institutions Code section 12301.07) that requires the California Department of Social Services to make a 20-percent reduction in each IHSS recipient's total authorized monthly service hours. The enclosed Notice of Action shows how many authorized monthly service hours you get now and how many you will get after the reduction.

The 20-percent reduction is in addition to the 3.6-percent reduction in your authorized monthly service hours that took effect February **1**, 2011, and which will continue until June 30, 2012.

You can decide which of your authorized services will be reduced. You can choose to reduce all of the hours from one authorized service or you can split it up among several different authorized services. Your provider(s) will receive notification about the 20-percent reduction on his/her timesheet(s). However, you are responsible for telling your provider(s) which specific service hours you have chosen to reduce. You do not have to tell the county how you have chosen to apply the reduction; this is between you and your provider(s).

If you believe that the 20-percent reduction in your authorized service hours puts you at serious risk of out-of-home placement, you can ask for IHSS Supplemental Care. You must complete the enclosed IHSS Application for Supplemental Care (SOC 877) and return it to the county by March 1, 2012. The county will review your application and determine whether you are at serious risk of out-of-home placement.  If the county determines that you are at serious risk of out-of-home  placement, your service hours may be partially or fully restored.

If you ask for IHSS Supplemental Care within 15 days of receiving this notice or mail it to the county postmarked no later than **January 3, 2012,** the reduction in your service hours will not go into effect and you will continue to get the same number of authorized service hours you have been getting until the county determines if you are at serious risk of out-of-home placement. If the county determines that you are at serious risk of out-of-home placement, your service hours may not be reduced at all or they may be reduced less than 20-percent.

The county will send you a notice telling you if your application for IHSS Supplemental Care has been approved or

> denied. If you disagree with the county's decision, you can
> request a state hearing on that decision. Information about
> your hearing rights is included on the back of this notice.
> However, requests for a state hearing only to dispute the
> new state law requiring the 20-percent reduction in
> authorized service hours will be dismissed.
>
> If you do not understand the information in this notice or
> you have any questions, contact your county IHSS office.

ACL Attachment A (TEMP 2257) (emphasis in original).

The notices and forms are to be translated into Armenian, Chinese and Spanish. ACL at 4. The ACL notes that each county is required generally to provide bilingual/interpretive services and written translations to non-English or limited-English proficient populations, as mandated by the Dymally Alatorre Bilingual Services Act, Government Code section 7290 et seq., and by state regulation, MPP Division 20, section 115. However, these mandates do not prescribe specific requirements as to how each county is to provide such assistance in the course of implementing the reductions under SB 73 or how IHSS recipients are to be informed of the availability of such assistance. The ACL does not provide for notification targeted to reach IHSS recipients who are visually impaired, cannot read or have mental impairments that thwart their ability to understand and respond to the notice.

Plaintiffs have submitted extensive evidence relevant to their likelihood of success on the merits and the irreparable harm to class members. Testimony by Charles Thurman and Helen Polly Stern is indicative of class members' vulnerabilities based on the service cuts.

United States District Court
For the Northern District of California

Charles Thurman is a seventy-one year old resident of Shasta County who has received IHSS since 2006.  Mr. Thurman, who was born blind, has had diabetes for several years, resulting in numbness, known as neuropathy, in his hands and feet.  He has Chronic Obstructive Pulmonary Disease, a condition that contributes to weakness and shortness of breath.  Mr. Thurman has coronary heart disease and high blood pressure, and has had four stents put in his coronary arteries to help blood circulate in his body.  Finally, flattened discs and damaged vertebrae in Mr. Thurman's back cause difficulty and pain in reaching, grasping, lifting and standing for prolonged periods of time.  Mr. Thurman can only walk a few steps and is at risk for falls.  Outside he uses an electric wheelchair.

Mr. Thurman has fallen twice during the past year.  Once, he broke his arm and toe.  The second time, he fell down on the front patio while he was trying to get out of his wheelchair.  Mr. Thurman's wife had to call 911 for assistance in lifting him up. The numbness in Mr. Thurman's hands impedes his ability to shave safely and properly groom himself.  He is also unable to cook and clean extensively.

Mr. Thurman's wife is sixty-five, cannot read, and is also disabled, having suffered several small heart attacks and endured a quadruple heart bypass.  She is unable to lift items weighing more than five pounds and cannot lift her arms over her head

United States District Court
For the Northern District of California

without risking a heart attack.  Mrs. Thurman is also an IHSS recipient.

Mr. and Mrs. Thurman share a single IHSS care provider who provides a number of services which help them continue to live independently in their mobile home.  The provider handles domestic chores, including cooking, cleaning and laundry, assists Mr. Thurman with grooming, and takes the couple to their doctors' appointments, shopping and on other errands.  Mr. Thurman currently receives 31.17 hours of IHSS care per month.  If his IHSS hours are cut by twenty percent, he will lose 6.23 hours.  As it is, the provider struggles to carry out all of the required assistance in the time period allotted.  On occasion, the provider has had to postpone grocery shopping or leave certain domestic tasks incomplete due to the lack of time.  As a result, Mr. and Mrs. Thurman have gone without fresh food and relied upon less nutritious microwaveable meals.  In addition, a dustier, dirtier home exacerbates their pulmonary problems.  They are at risk of falling as they try to take on certain tasks to make up for the lack of IHSS assistance.

Helen Polly Stern is eighty-six years old, and has received IHSS since 2009.  Ms. Stern is physically disabled.  She has bilateral hip dysplasia, which is the deformation of the hip joints, as well as osteoarthritis and osteoporosis.  The limbs on the right side of her body are shorter than the limbs on her left

side.  Ms. Stern has undergone numerous operations to treat this condition.

Ms. Stern also suffers from cardiovascular, skin and bladder problems.  When she was fifty-eight she developed congestive heart failure.  She has had surgeries to remove blood clots from her legs.  She has poor circulation and edema--water retention--below the skin of her legs resulting in painful swelling.  She is prone to rashes, as well.  In the past, the edema and skin outbreaks have led to open wounds and oozing sores.  Ms. Stern underwent skin grafting on her left leg to treat the problems.  Through the routine assistance provided by IHSS these problems have been brought under control.  Ms. Stern also suffers from chronic inflammation of the bladder wall and frequent urinary tract infections.  She regularly experiences urinary incontinence.

Ms. Stern's IHSS provider gives assistance for bowel and bladder care, bathing, oral hygiene and grooming.  This assistance is critical due, in part, to Ms. Stern's incontinence and serious skin problems.  Ms. Stern requires frequent undressing and redressing due to her accidents, which occur several times per week.  Ms. Stern cannot wear diapers or incontinence pads during the day because of her skin problems.  The provider also prepares three meals a day for Ms. Stern, assists her in her wheelchair, takes her to medical appointments, and does the shopping and household chores.  Ms. Stern is authorized to receive 126.1 hours of IHSS care per month, but since 2010, due to a 3.6 percent cut,

she has received 121.6 hours of care per month, approximately four hours per day, seven days per week.  Ms. Stern's provider, however, normally stays five hours per day, even though she is paid only for four hours.  The provider works two shifts, one in the morning and another in the evening.

A twenty percent reduction in Ms. Stern's IHSS hours would undermine her ability to maintain a hygienic and healthy home and to keep her skin problems under control.  If Ms. Stern's IHSS hours are cut by twenty percent, her provider will likely need to find another job, interfering with her ability to work two shifts and provide a free hour of service each day.

Plaintiffs allege eight claims in their Third Amended Complaint.  The first claim alleges that the notices Defendants propose to send to IHSS recipients are inadequate under constitutional due process standards.  The second claim alleges that ABX4 4 and SB 73 deprive IHSS recipients of their right to notice and a pre-termination hearing in violation of the provision of the Medicaid Act establishing right to a fair hearing.  The third and fourth claims allege that ABX4 4 and SB 73 violate the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act of 1973, respectively.  The fifth, sixth and seventh claims allege that both state enactments violate the comparability, sufficiency and reasonable standards requirements of the Medicaid Act.

LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Alternatively, "a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation and editing marks omitted).

A court employs a sliding scale when considering a plaintiff's showing as to the likelihood of success on the merits and the likelihood of irreparable harm. Id. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id.

DISCUSSION

I. Likelihood of Success on the Merits

    A. Standing

    Defendants contend that all Plaintiffs lack standing.  In every federal case, the court must make a threshold determination of standing.  Warth v. Seldin, 422 U.S. 490, 498 (1975).  "The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"  Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Warth, 422 U.S. at 498).  To satisfy the case or controversy requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must have suffered (1) an injury in fact, (2) that is fairly traceable to the actions of the defendant, such that (3) if a favorable court decision were rendered, it is likely the injury would be redressed.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  An "injury in fact" is more than an injury to a cognizable interest; to satisfy this requirement, the injury must be concrete and particularized.  Id.  According to the Lujan court, "particularized" means that the injury must have affected the plaintiff "in a personal and individual way."  Id. at 560 n.1.

    In addition to the immutable, constitutional requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing."  Valley Forge v. Americans United, 454 U.S. 464, 474-75 (1982).

17

**United States District Court**
For the Northern District of California

Among these prudential limits is the doctrine that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statute invoked in the suit. Allen v. Wright, 468 U.S. 737, 751 (1984); Valley Forge, 454 U.S. at 474-75. Another prudential limit is the principle that the plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499.

Where one party has standing to pursue the claims at issue, a court need not separately analyze whether other parties have standing to sue. Brown v. City of Los Angeles, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008) ("[T]he presence in a suit of even one party with standing suffices to make a claim justiciable."); Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("[W]e consider only whether at least one named plaintiff satisfies the standing requirements . . . .").

First, Defendants argue that named Plaintiffs Oster, Jones, C.R. and L.C. lack standing to pursue any of their claims because they are exempt from SB 73's reduction in hours. Plaintiffs agree that Plaintiffs Oster, Jones and C.R. lack standing with respect to the claims based on SB 73. However, Plaintiffs Oster, Jones and C.R. have standing to pursue claims based on ABX4 4.

Defendants assert that L.C. lacks standing as an individual and as a representative of a subclass pursuing claims on behalf of present or future IHSS recipients who are under the age of twenty-

18

one, who are entitled to the protections of the Early Periodic

Screening Diagnosis and Treatment (EPSDT) provisions, and have or

will receive notice of service cuts pursuant to SB 73.  Eileen

Carroll, Deputy Director of the Adult Programs Division of the

CDSS, attested that all IHSS recipients who receive EPSDT services

are pre-approved for exemption from the reduction in services.

However, Ms. Carroll's declaration was drafted for purposes of

this litigation.  There is no indication that the EPSDT exemption

is legally binding on the counties by virtue of statutory or

regulatory law or otherwise.  Therefore, it appears that L.C. may

be subject to cuts based on SB 73 and has standing.

Defendants argue that the claims of named Plaintiffs Stern,

Thurman and Hylton are not ripe because they may request

restoration of their hours by applying for Supplemental Care.[2]

"[T]he possibility of future injury may be sufficient to confer

standing . . . [A] credible threat of harm is sufficient to

constitute actual injury for standing purposes."  Cent. Delta

Water Agency v. United States, 306 F.3d 938, 946, 950 (9th Cir.

2002).  Unless enjoined, the reductions here will be automatically

applied.  Named Plaintiffs Stern, Thurman and Hylton will be

notified that their IHSS hours will be reduced.  The injury is the

notice and reduction of IHSS hours, not the denial of a

---

[2] Defendants also make this argument with respect to named
Plaintiff Sheppard, but Plaintiffs no longer propose him as a
class representative.  Docket No. 195.

United States District Court
For the Northern District of California

recipient's request for restoration of hours.  Defendants rely upon Summar H. v. Fukino, 2009 WL 1249306 (D. Haw.), but that decision is not binding on this Court and is not persuasive in light of controlling Ninth Circuit authority.

The present dispute is appropriate for adjudication, even under the standard for prudential ripeness that Defendants cite: (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration.  See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1211 (9th Cir. 2006).  Plaintiffs' challenge to cuts mandated by SB 73 is not abstract.  The fact that some Supplemental Care applications may be granted to restore hours for individual IHSS recipients does not defeat the ripeness of the dispute Plaintiffs have presented.

Next, Defendants argue that Union Plaintiffs lack Article III standing.  Union Plaintiffs respond that they satisfy the requirements for associational standing.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

United States District Court
For the Northern District of California

Defendants assert that Union Plaintiffs have not established that any of their members would have standing to sue in their own right. However, Laura Soto is a member of Plaintiff United Domestic Workers of America, AFSCME, Local 3930, AFL-CIO (UDW), and provides IHSS services to named Plaintiff Hylton, who will receive a notice of a twenty percent reduction in her hours. Declaration of Laura Soto, Docket No. 481, at ¶¶ 1-2; Second Declaration of Gary Voice, Docket No. 485, at ¶ 19;[3] Second Declaration of Andrea Hylton, Docket No. 371, at ¶ 22. Similarly, Katie Phillips, another UDW member, provides IHSS services to her adult son, who suffers from paranoid schizophrenia and depression. Declaration of Katie Phillips, Docket No. 393, at ¶¶ 2-3; Voice Dec. at ¶ 19. Ms. Phillips' son faces a twenty percent reduction in hours, which will adversely impact Ms. Phillips. Phillips Dec. at ¶ 22. Ms. Soto and Ms. Phillips have standing to sue in their own right because they will suffer economic harm as a result of the reductions. See Independent Living Ctr. v. Shewry, 543 F.3d 1050, 1065 (9th Cir. 2008) ("Petitioners include independent

---

[3] The Soto and Voice declarations were submitted in support of Plaintiffs' reply brief. Defendants objected to the submission of new evidence in connection with the reply, but both declarations directly respond to standing issues that Defendants raised in their opposition. Furthermore, Defendants' specific objection to the Soto declaration did not address the testimony cited here. Defendants did not specifically object to the Voice Declaration, although they stated that they did not have sufficient time to review all of the declarations. Federal Rules of Evidence 402, 602, 701, 702 and 802 do not require the exclusion of Mr. Voice's testimony. Defendants' objections are overruled.

pharmacies and health care providers participating in the State's Medi-Cal program that, according to their complaint, will be 'directly injured, by loss of gross income' when the ten-percent rate reduction takes effect.").

Contrary to Defendants' argument, Union Plaintiffs' claims in this litigation are also germane to their organizational interests.  Union Plaintiffs represent IHSS providers who are seeking to prevent the reduction of IHSS benefits, which will, in turn, lessen the amount of work available to their members.  Union Plaintiffs and IHSS recipients have a mutual interest in the success of the litigation.  From the beginning of this lawsuit, the joint goal of all Plaintiffs has been to ensure that IHSS recipients receive the services that they need to remain safely in their homes.

The third factor under Hunt is satisfied because the participation of individual members is not necessary in suits that seek only prospective, injunctive relief, rather than damages. United Food and Commercial Workers v. Brown Group, Inc., 517 U.S. 544, 554 (1996) (third Hunt prong precludes standing "when an organization seeks damages on behalf of its members."); International Union v. Brock, 477 U.S. 274, 287 (1986) (union has standing to challenge government's interpretation of Trade Act, where suit sought no damages and thus did not entail "individualized proof.").  Thus, Union Plaintiffs' members need

United States District Court
For the Northern District of California

not be joined as parties in order for Union Plaintiffs to have associational standing.

Defendants, citing Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999), also argue that Union Plaintiffs lack standing because the claims asserted and relief requested require the demonstration of injury to a named union member Plaintiff. Unlike the class in Hodgers, Plaintiffs in this case do not invoke injury merely to unnamed Plaintiffs for the purpose of establishing Article III standing.  Furthermore, the Ninth Circuit recently reiterated, "An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization's goals and requires the organization 'to expend resources in representing clients they otherwise would spend in other ways.'"  Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 943 (9th Cir. 2011) (citing El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 748 (9th Cir. 1992)).  Union Plaintiffs have submitted evidence to this effect.  Declaration of David Werlin, Docket No. 488, at ¶¶ 1-7; Second Voice Dec. at ¶¶ 1-19.[4]

---

[4] Defendants' objections to this evidence are overruled. Plaintiffs' reply evidence was submitted in direct response to the standing issues Defendants raised in their opposition, and the Court has considered and overruled the objections based on evidentiary rules barring irrelevant testimony, hearsay testimony, testimony lacking personal knowledge, and improper expert and layperson testimony.

**United States District Court**
For the Northern District of California

Defendants also argue that Union Plaintiffs lack prudential standing because their claims are not within the "zone of interests" protected by any of the laws on which Plaintiffs base their claims.  This argument also fails.  The zone of interests test "is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff."  Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 399-400 (1987).  "The proper inquiry is simply 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected . . . by the statute.' . . . [W]e first discern the interests 'arguably . . . to be protected' by the statutory provision at issue; we then inquire whether the plaintiff's interests affected" by the action in question are among them.  National Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 492 (1998) (emphasis in original) (citation omitted).  "Prudential standing is satisfied unless [the party's] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that [the legislature] intended to permit the suit."  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th Cir. 2009) (quotation marks and citations omitted; brackets in original).

Here, IHSS providers are within the zone of interests of the Medicaid Act, the ADA and the Rehabilitation Act because the services they provide are a critical component of the mandates and

24

benefits established by those laws.  Although Plaintiffs have not cited cases holding that IHSS providers are within the zone of interests of these statutes, several courts have come to a similar conclusion in the context of persons who provide care subsidized by the Social Security Act.  See California Ass'n of Bioanalysts v. Rank, 577 F. Supp. 1342, 1347 n.6 (C.D. Cal. 1983) ("While Medicaid providers are clearly not the primary beneficiaries of the Social Security Act . . . the majority view [is] that such providers are arguably within the zone of interests protected under the statute."); see also Edgewater Nursing Ctr., Inc. v. Miller, 678 F.2d 716, 718 (7th Cir. 1982) (plaintiff providers "have standing to challenge any feature of the state's plan that violates the [Medicaid] statute to their detriment"); Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Pub. Welfare, 602 F.2d 150, 153 n.6 (8th Cir. 1979) ("Appellants, as Medicaid providers, do have standing to challenge alleged violations of the Social Security Laws.").  Thus, under the "arguably protected" standard, Union Plaintiffs are within the zone of interests of the statutes at issue.

In sum, although Union Plaintiffs need not establish standing in their own right because the individual Plaintiffs have standing, the Court concludes that Union Plaintiffs have satisfied the standing requirements.

United States District Court
For the Northern District of California

B. Medicaid Act Claims

Defendants argue that the Court should defer ruling on the merits of Plaintiffs' reasonable standards and sufficiency claims under the Medicaid Act, pending the Supreme Court's resolution of an appeal certified to address whether Medicaid recipients and providers may maintain a cause of action under the Supremacy Clause to enforce provisions of the statute.  In the order explaining the injunction against the implementation of ABX4 4, the Court relied on Ninth Circuit precedent, specifically Shewry, 543 F.3d at 1056-57, to find that Plaintiffs stated a claim under the Supremacy Clause, even though the Medicaid Act provision requiring reasonable standards is not privately enforceable under 42 U.S.C. § 1983.  October 23, 2009 Order at 18-19.  Defendants appealed the Court's preliminary injunction.  On January 28, 2011, the Ninth Circuit withdrew submission of the case and deferred ruling on the appeal, pending the Supreme Court's decision in the consolidated appeals of Maxwell-Jolly v. Indep. Living Ctr., 572 F.3d 644 (9th Cir. 2009);[5] Maxwell-Jolly v. Calif. Pharmacists Ass'n, 374 Fed. Appx. 690 (9th Cir. 2010); and Maxwell-Jolly v. Santa Rosa Mem. Hosp., 380 Fed. Appx. 656 (9th Cir. 2010).  On February 23, 2012, the Supreme Court remanded the consolidated appeal to the Ninth Circuit due a change in the procedural posture

---

[5] Maxwell-Jolly v. Indep. Living Ctr., 572 F.3d 644 (9th Cir. 2009), is a later appeal arising from the same case that produced the decision in Independent Living Ctr. v. Shewry, 543 F.3d 1050, 1065 (9th Cir. 2008).

26

of the cases and did not resolve the certified question.[6]  <u>Douglas</u> <u>v. Independent Living Center of Southern California, Inc.</u>, Nos. 09-958, 09-1158, and 10-283, slip. op. at 5-8 (U.S.).  The Court declines to defer a decision on Plaintiffs' request for a preliminary injunction, pending the Ninth Circuit's resolution of the appeal on remand.

        1. Reasonable Standards Requirement

      The Medicaid Act requires that all participating states use "reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives" of the program.  42 U.S.C. § 1396a(a)(17).  The primary objectives of the Medicaid program are to provide medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services and to furnish "rehabilitation and other services to help such . . . individuals attain and retain capability for independence or self care."  42 U.S.C. § 1396-1.

      [6] The Supreme Court explained that to qualify for federal Medicaid funds, states must submit a state Medicaid plan that details the nature and scope of services in their state's Medicaid program for review and approval by the federal agency, Centers for Medicare & Medicaid Services (CMS).  In addition, states must submit, from time to time, any amendments to the plan for approval.  In October 2011, after the Supreme Court heard oral argument in <u>Independent Living Center</u>, CMS approved several of California's statutory amendments to the plan.  The Supreme Court found that the procedural posture of the case had changed, such that respondent Medicaid providers and beneficiaries may be required to proceed under the Administrative Procedure Act, 5 U.S.C. § 701, <u>et</u> <u>seq</u>.  On that basis, the Court remanded the appeal to the Ninth Circuit for further consideration.

United States District Court
For the Northern District of California

Plaintiffs have demonstrated that they are likely to succeed on their claim that SB 73 violates the reasonable standards mandate of the Medicaid Act.  The reduction in IHSS hours stems from California's budget crisis as opposed to evidence that the need for IHSS hours has been incorrectly evaluated.  It is true that California is experiencing a budget crisis.  Although budgetary needs may be considered in determining that service cuts are required, it may not be the sole reason for the reduction. See Independent Living Center, 572 F.3d at 656 ("the State's decision to reduce Medi-Cal reimbursement rates based solely on state budgetary concerns violated federal law."); Beno v. Shalala, 30 F.3d 1057, 1069 n.30 (9th Cir. 1994).  Defendants assert that the implementation of the cuts is reasonable in that specific groups of recipients are exempt because "they are categorically at serious risk of out-of-home placement as a result of the reduction."  ACL at 4.

However, certain IHSS recipients will be cut back to twenty percent fewer hours for reasons unrelated to need.  These IHSS recipients are not in an exempt or pre-approved group and will receive a notice of action, even though they are presumptively at serious risk of out-of-home placement.  Only if these seriously at-risk recipients submit a Supplemental Care application will they be considered for a restoration of needed service hours.  In this respect, eligibility for services is determined, not by a reasonable need-based standard, but by the ability of seriously

at-risk recipients to request in a timely manner a restoration of their hours.  The CDSS could readily identify many of these seriously at-risk recipients, just as they have done with the exempt and pre-approved groups, because the determination that they are seriously at risk is based on information contained in CMIPS.  Thus, even if rote reliance on functional ranks were a reasonable basis to determine need, Defendants' implementation plan is likely to be found unreasonable.  Defendants' plan would deliberately cut services for IHSS recipients who are already known to be presumptively eligible for a restoration of their lost hours, should they protest the twenty percent reduction by applying for Supplemental Care.  Defendants seemingly expect the State will save funds by cutting the service hours of those who are unable to protest the hours reduction.

2. Comparability Requirement

The "comparability" requirement of the Medicaid Act mandates comparable services for individuals with comparable needs; it is violated when some recipients are treated differently than others with the same level of need.  42 U.S.C. § 1396a(a)(10)(B); see also 42 C.F.R. § 440.240; Jenkins v. Washington State Dep't of Social & Health Servs., 160 Wash. 2d 287, 296-97 (2007); Sobky v. Smoley, 855 F. Supp. 1123, 1139 (E.D. Cal. 1994) (comparability requirement "creates an equality principle" for all medically needy individuals); Schott v. Olszewski, 401 F.3d 682, 688-89 (6th Cir. 2005); White v. Beal, 555 F.2d 1146, 1151-52 (3d Cir. 1977).

A state may "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."  42 C.F.R. § 440.230(c)(2).  However, a state may not "arbitrarily deny or reduce the amount, duration, or scope of a required service . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition."  42 C.F.R. § 440.230(c)(1).

Defendants argue that SB 73 does not violate the comparability requirement because the exempted and pre-approved groups that categorically escape the twenty percent reduction are identified using objective, needs-based criteria, and recipients who receive the notice of action are afforded an opportunity to seek individualized review.  Plaintiffs counter that the comparability requirement is violated because the use of functional ranks to determine service hours will result in recipients with comparable needs receiving different levels of IHSS.  As the Court explained in its October 23, 2009 order, the use of functional ranks to determine eligibility for services likely violates the comparability requirement because it does not reasonably measure the individual need of a disabled or elderly person for a particular service.  October 23, 2009 Order at 12-13.  The functional rank of two, which recognizes a need for verbal assistance, compared to the ranks of three, four and five, reflects the nature of the assistance needed, not the severity of the need.  For example, a person with a cognitive disorder may

only require verbal reminders or encouragement to eat and or take her medications, but the absence of such assistance could have a dramatic, negative impact on the recipient's health and ability to live safely at home.

Furthermore, it is likely that some recipients who are seriously at-risk for out-of-home placement and receive notice of the reduction will not be able timely to complete a Supplemental Care application.  Thus, the reductions will go into effect for them.  Yet, recipients with comparable or lesser needs who are able to and do request Supplemental Care may preserve their hours of service.  A violation of the comparability requirement is likely to result from the automatic imposition of the twenty percent reduction on those IHSS recipients who do not apply for Supplemental Care before the deadline.

As noted above, while recipients in State Home and Community Based Services waiver programs are exempt from the cut, recipients who qualify for these programs but are on waiting lists are not exempt.  Defendants argue that Congress has waived the comparability requirement with respect to these programs by allowing states to provide specific services to certain targeted populations.  See 42 U.S.C. § 1396n(c).  This does not permit the State to violate the comparability mandate by cutting the basic services for some recipients with the same diagnoses and needs. IHSS recipients on the waiting lists who are eligible for the waiver programs should be eligible for the exemption granted to

31

**United States District Court**
For the Northern District of California

those in the programs.  The failure to exempt such recipients

likely violates the comparability mandate.

Under the plan to implement SB 73, the differences in IHSS

hours authorized for those who are exempted or pre-approved,

compared to those are presumptively eligible for a restoration of

hours, but fail to apply for it, are due to the CDSS's decision

not to identify seriously at-risk recipients prior to subjecting

them to a twenty percent reduction and, instead, to require such

individuals to submit a Supplemental Care application.  Therefore,

Plaintiffs are likely to succeed on their comparability claim.

3. Sufficiency Requirement

The regulations implementing the Medicaid Act contain a

"sufficiency" requirement, which mandates, "Each service must be

sufficient in amount, duration, and scope to reasonably achieve

its purpose."  42 C.F.R. § 440.230(b).  When a state commits to

provide a Medicaid service, the sufficiency requirement ensures

that it adequately fulfills its commitment.

Defendants first argue that federal regulation 42 C.F.R.

§ 440.230(b) cannot provide the basis for Plaintiffs' sufficiency

claim.  However, as the Court noted in its October 2009 order,

federal regulations may carry preemptive force, see, e.g., Geier

v. American Honda Motor Co., 529 U.S. 861, 884-86 (2000), and, as

such, they may provide a cause of action for injunctive relief

under the Supremacy Clause.

32

The IHSS hours authorized for recipients are those that the State has determined to be necessary to permit the recipients to remain safely in their homes.  MPP § 30-761.1.  As a result, the twenty percent reduction in these services will likely leave affected individuals without a level of service sufficient to achieve the purpose of the program.

The Supplemental Care application does not alter this likely outcome because the review process occurs only after recipients submit an application by the deadline.  It is probable that some recipients will not be able to apply and that some who need restoration of IHSS hours will attempt to cope with the reduction, allowing the deadline to pass before realizing the full impact of the reduced hours.

The State concedes that the test it will use to restore hours pursuant to the Supplemental Care application--hours necessary to avoid serious risk of out-of-home placement--is identical to the standard for the authorization of IHSS hours that was used in the first place--necessary for the IHSS recipient to remain safely at home.  Nonetheless, the Supplemental Care worksheet demonstrates that IHSS recipients who do not meet the test in Parts A or B of the worksheet, because they have functional ranks that entail only verbal or some human assistance to complete certain functions, will not be eligible for a restoration of their reduced IHSS hours.  Based on their functional ranks, IHSS recipients will be deprived of hours that the State has previously determined are

necessary for them to remain safely at home.  The worksheet requires a mechanistic calculation that leaves no opportunity to consider individual need that may exist in spite of a recipient's seemingly disqualifying functional ranks.  The only individualized determination allowed is to cut the hours for which an IHSS recipient would otherwise be eligible, if he or she can manage some other way.  The Supplemental Care application process exacerbates the fact that functional ranks are not an accurate measure of need in the first place, because functional ranks indicate the nature of the assistance, rather than the importance of the need for the assistance to ensure that the recipient is able to remain safely at home.

Plaintiffs have demonstrated a likelihood of succeeding on the merits of their claim that SB 73 imposes cuts that will deprive IHSS recipients of IHSS hours sufficient to ensure that they are able to remain safely at home.

C. ADA and Rehabilitation Act Claims

The ADA and the Rehabilitation Act prohibit discrimination based on disability.  42 U.S.C. § 12132; 29 U.S.C. § 794(a).  Unnecessary isolation is a form of discrimination against people with disabilities.  As the Supreme Court has explained, "unjustified isolation" of the disabled amounts to discrimination because institutional placement "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and "severely diminishes everyday

34

**United States District Court**
For the Northern District of California

life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 597, 600-01 (1999). Thus, both the ADA and the Rehabilitation Act contain an "integration mandate" which "serves one of the principal purposes of Title II of the ADA: ending the isolation and segregation of disabled persons." <u>Arc of Washington State v. Braddock</u>, 427 F.3d 615, 618 (9th Cir. 2005). States are required to provide care in integrated environments for as many disabled persons as is reasonably feasible, so long as such an environment is appropriate to their health needs. Specifically, the ADA regulations provide: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified persons with disabilities." 28 C.F.R. § 35.130(d). "The 'most integrated setting' is defined as 'a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible.'" <u>Brantley</u>, 2009 WL 2941519, at *6 (citing 28 C.F.R. pt. 35 app. A; <u>Olmstead</u>, 527 U.S. at 592). Plaintiffs who currently reside in community settings may assert ADA integration claims to challenge state actions that give rise to a risk of unnecessary institutionalization. <u>See</u> <u>Fisher v. Oklahoma Health Care Auth.</u>, 335 F.3d 1175, 1181-82 (10th Cir. 2003).

Defendants assert that Plaintiffs are unlikely to succeed because they do not have Article III standing to pursue their ADA

United States District Court
For the Northern District of California

claim.  Defendants assert that individual Plaintiffs have failed to demonstrate injury under Article III because they have not shown that they are at imminent risk of institutionalization.  For the reasons explained above, Plaintiffs have Article III standing because they face a "credible threat" of harm in that they are likely to face a twenty percent reduction in their IHSS service hours.  See Cent. Delta Water Agency, 306 F.3d at 946.  Defendants confuse the constitutional standing requirement of injury in fact with the merits of Plaintiffs' claim that SB 73 unlawfully creates a risk of unnecessary institutionalization.  The record demonstrates the likelihood that IHSS recipients who are presumptively eligible for a restoration of hours will not have their hours restored because they will be unable timely to submit a request for Supplemental Care.  The evidence also shows that Plaintiffs are likely to succeed in demonstrating that the loss of IHSS hours will compromise the health and well-being of IHSS recipients such that they will be at serious risk of institutionalization.[7]  M.R. v. Dreyfus, 663 F.3d 1100, 1116 (9th Cir. 2011) ("An ADA plaintiff need not show that institutionalization is 'inevitable' or that she has 'no choice'

---

[7] Defendants' objections to IHSS recipients' testimony about the health risks posed by the twenty percent reduction in IHSS hours are overruled.  The declarants have personal knowledge of the likely impact that the lost hours will have on their health and their ability to remain safely at home based on their personal knowledge of their own health status and past experiences.

**United States District Court**
For the Northern District of California

but to submit to institutional care in order to state a violation of the integration mandate.").

Defendants also argue that Plaintiffs' claim that the ADA and Rehabilitation Act require the continuation of IHSS hours for certain individuals amounts to impermissible commandeering under the Tenth Amendment.  This argument is foreclosed by Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002).  There the Ninth Circuit rejected the argument that Congress exceeded its Spending Clause powers and the conditions set forth in South Dakota v. Dole, 483 U.S. 203 (1987), when it approved section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).  Id. at 1051.  The court reasoned that Congress has a strong interest in ensuring that federal funds are not used in a discriminatory manner and in holding states responsible when they violate funding conditions. Id.  The court also found an inadequate showing of "extraordinary circumstances . . . that would allow us to hold that Congress exceeded constitutional boundaries."  Id. (internal citations omitted).

Finally, Defendants have not established that the integration mandate is limited to deterring the unjustified isolation of disabled individuals in twenty-four-hour residential nursing care centers.

Plaintiffs have established their likelihood of success on the merits of their claims under the ADA and the Rehabilitation Act.

D. Due Process Claims

When parties are threatened with the loss of a protected property interest, due process under the Fourteenth Amendment requires that a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950).  IHSS recipients must receive "timely and adequate notice detailing the reasons" for the adverse action and "an effective opportunity to defend" themselves. Goldberg v. Kelly, 397 U.S. 254, 268-69 (1970).  To comport with due process, notice must be "tailored to the capacities and circumstances" of the recipients who must decide whether to request a hearing.  Id. at 268.  "The government must consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case."  Jones v. Flowers, 547 U.S. 220, 221 (2006).

Plaintiffs are likely to show that notice of the reductions is not reasonably calculated to inform IHSS recipients.  The explanation letter is deficient in several respects.  The letter does not use simple language.  It uses small print, and a font and formatting that undermine the letter's readability.  Declaration

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

of Gavin Huntley-Fenner, Ph.D., at ¶¶ 14-17.[8]  Relying on the results of various readability tests, among other things, Dr. Huntley-Finner opined that the information contained in the letter was presented at a level of reading difficulty well above that of many adult beneficiaries of Medi-Cal, California's Medicaid program.  The plan fails to provide for any method of notification other than written.  Thus, Plaintiffs are likely to demonstrate that the explanation letter is not reasonably calculated to inform IHSS recipients who have visual and cognitive disabilities, or read at a lower level or not at all.

Furthermore, the letter does not specifically address how to access translations of the notices and forms or even state that they are available.  The IHSS recipient population includes people who cannot read English, Spanish, Armenian or Chinese.  Therefore, the letter is not reasonably calculated to provide notice to the linguistically diverse population of IHSS recipients.

The letter erroneously states that section 12301.07 of the California Welfare and Institutions Code requires a twenty percent reduction of each IHSS recipient's service hours, without noting

---

[8] The Court overrules Defendants' evidentiary objection to Dr. Huntley-Fenner's testimony that it amounts to improper expert opinion.  Dr. Huntley-Fenner's declaration establishes his qualifications as expert witness.  Furthermore, his consideration of facts that underlie his opinions as to the readability of Defendants' notices and his opinions themselves do not amount to statements on the ultimate legal issue of whether the notices were adequate under due process standards.  Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.")

United States District Court
For the Northern District of California

the exceptions, and could be read to suggest that the twenty percent reduction will end on June 30, 2012.

The letter does not state in a plain and forthright manner that Supplemental Care amounts to the restoration of lost hours. It does not explain in a simple manner each enclosed form, or include step-by-step instructions for completing and mailing the necessary forms. A recipient could fail to understand that the Supplemental Care application must be submitted immediately and that the form to request a hearing is submitted only if the former is denied and the recipient wishes to protest the denial. The letter further states that requests for a hearing only to dispute the new law requiring the twenty percent reduction will be dismissed, which could confuse or mislead a recipient to believe that the hearing is not an opportunity to appeal the twenty percent reduction of his or her own service hours that resulted from the law. Although the letter states that a recipient may contact his or her county IHSS office for further information, it does not identify the relevant contact person or phone number to call.

Finally, the Supplemental Care application is inadequate. The application requires recipients to explain why they require the restoration of their hours but does not mention functional ranks. This suggests that the CDSS will consider the written explanation as the basis for the decision to restore hours. IHSS recipients are not informed of the role of functional ranks in the determination of whether IHSS hours will be restored or of their

**United States District Court**
For the Northern District of California

own disqualifying functional ranks.  These omissions and misleading statements leave IHSS recipients uninformed of the actual reason for the decision to reduce their hours and unable to rebut it effectively.

Defendants assert that Jones, 547 U.S. at 200, and Covey v. Town of Somers, 351 U.S. 141 (1956), are inapposite because they address the manner of notice, rather than content.  This distinction is immaterial.  Jones involved the sale of property by the state due to the owner's tax delinquency and the adequacy of notice to the owner.  The state had mailed a certified letter in an attempt to notify the owner of the tax delinquency, but the notice was returned as unclaimed.  Citing Mullane, the Court reasoned that the means employed to give notice "must be such as one desirous of actually informing" the individual entitled to notice.  The content of the State's notice, as well as the manner of its delivery, may evidence the State's desire actually to inform the IHSS recipients of the way to escape the twenty percent reduction.

Plaintiffs have demonstrated that they are likely to succeed on their due process claims.

II. Irreparable Harm, Balance of Hardships and the Public Interest

As the Court noted in its first preliminary injunction order, numerous federal courts have recognized that the reduction or elimination of public medical benefits irreparably harms the

**United States District Court**
For the Northern District of California

participants in the programs cut.  October 23, 2009 Order at 26.
See also, M.R., 663 F.3d at 1108-1115.

The substantial evidence submitted by Plaintiffs, as
exemplified by Mr. Thurman's and Ms. Stern's declarations,
demonstrates the likelihood of irreparable harm resulting from the
reduction in IHSS hours.  Plaintiffs like these have shown that
the reduction in services, including domestic services, places
their health in jeopardy, such that they are more likely to fall
and injure themselves, eat less healthily or live in unhygienic
conditions.  These unhealthy conditions increase the risk that
they will be unable to live safely at home and instead will be
institutionalized.

Because Defendants' interests are strictly fiscal and
Plaintiffs' interests affect their health, well-being and ability
to remain safely at home, the equities clearly weigh in favor of
Plaintiffs.  M.R., 663 F.3d at 1120 (stating that the Ninth
Circuit has "several times held that the balance of hardships
favors beneficiaries of public assistance who may be forced to do
without needed medical services over a state concerned with
conserving scarce resources.").

In fact, the deprivation of essential services to the
disabled is part of the assessment of the public interest at
stake.  Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983).
Further, Plaintiffs have demonstrated that IHSS is likely to be
cost-effective as compared to the expenses incurred when disabled

42

**United States District Court**
For the Northern District of California

and elderly individuals are institutionalized.  See e.g. Kline Decl., Docket No. 31, Ex. G at 7, Table 2; Second Declaration of Dionne Jimenez, Docket No. 373, at ¶¶ 3-7.  This evidence further supports that the balance of equities and public interest weighs in favor of Plaintiffs.  M.R., 663 F.3d at 1120 ("Plaintiffs have advanced such evidence . . . showing that if program beneficiaries currently treated in their homes transition to more costly institutional care, the state will not realize its anticipated savings.").

In addition to establishing a likelihood of success on the merits, Plaintiffs have demonstrated their likelihood of irreparable harm, that the balance of equities weighs in their favor, and that an injunction serves the public interest.

CONCLUSION

Because Plaintiffs have demonstrated a likelihood of success on the merits and irreparable harm, such that the equities weigh in their favor, their request for a preliminary injunction is granted.  The injunction will issue in a separate order.  The Court recognizes California's continuing budget crisis, and will not foreclose all reductions of IHSS hours.  The State may cut IHSS hours if unnecessary hours are being compensated, but may not impose cuts mechanistically and then determine the actual needs thereafter.  And, the State must give adequate notice to IHSS recipients of the reasons for the reduction of their authorized service hours, and of their remedies.

**United States District Court**
For the Northern District of California

At the hearing on the motion for a preliminary injunction, the Court asked the parties to meet and confer and attempt to agree on proposed terms for an injunction that would remedy the defects the Court found, in the most effective and least intrusive way.  The parties have not reached agreement.  Nonetheless, the Court would entertain such proposals to modify the injunction.

The Court exercises its discretion to waive the bond requirement for Plaintiffs because they are indigent and to ensure their ability to access the courts on behalf of themselves and other class members.  See Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2005); Walker v. Pierce, 665 F. Supp. 831, 844 (N.D. Cal. 1987).

IT IS SO ORDERED.


Dated: ĞÐGÐGЄFG

_____
CLAUDIA WILKEN
United States District Judge

44