MELINDA BIRD (SBN 102236)
MARILYN HOLLE (SBN 61530)
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
melinda.bird@disabilityrightsca.org
marilyn.holle@disabilityrightsca.org

ANNA RICH (SBN 230195)
NATIONAL SENIOR CITIZEN LAW CENTER
1330 Broadway, Suite 525
Oakland, CA 94612
Telephone: (510) 663-1055
Facsimile: (510) 663-1051
arich@nsclc.org

*Attorneys for Named Plaintiffs and the Class*
*Additional Attorneys for Named Plaintiffs and the*
*Class on Signature Page*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| DAVID OSTER, *et al.*,<br><br>Plaintiffs<br><br>v.<br><br>WILL LIGHTBOURNE, Director of the California Department of Social Services; TOBY DOUGLAS, Director of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; and CALIFORNIA DEPARTMENT OF SOCIAL SERVICES,<br><br>Defendants | Case No.: CV 09-04668 CW<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT, AND FOR AN ORDER DIRECTING NOTICE TO THE CLASS AND SCHEDULING A FAIRNESS HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**Hearing Date:** April 4, 2013<br>**Time:** 2:00 P.M.<br>**Judge:** Hon. Claudia Wilken<br>**Address:** 1301 Clay Street<br>Oakland, CA 94102<br>**Courtroom:** 2, 4th Floor |

**TABLE OF CONTENTS**

**NOTICE OF MOTION AND MOTION** .................................................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................ 1

**I.     INTRODUCTION AND SUMMARY OF SETTLEMENT** ............................................. 1

**II.    PROCEDURAL HISTORY** ................................................................................................ 2

**III.   DESCRIPTION OF SETTLEMENT PROVISIONS** ...................................................... 4

**IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER FED. RULE OF CIV. PROC. 23(e)** .................................................................................. 5

    A.   The Settlement is the Product of Serious, Informed, Non-collusive Negotiations Conducted by Experienced Counsel ....................................................... 6

    B.   The Settlement Fairly and Adequately Addresses the Concerns Underlying the Litigation and Provides Similar Benefits to All Similarly Situated Class Members .................................................................................................................... 7

    C.   The Settlement is Reasonable in Light of the Risks of Further Litigation and Other Factors ............................................................................................................. 8

**VI.   THE PROPOSED CLASS NOTICE AND PROCEDURE FOR APPROVAL ARE APPROPRIATE UNDER FED. RULE OF CIV. PROC. 23(e)(1)** ......................... 9

    A.   The Proposed Settlement Notice Provides Appropriate Information to Class Members in Easily Understandable Language. ........................................................ 9

    B.   The Process for Distribution of Class Notice is Reasonably Calculated to Reach Class Members. ............................................................................................ 10

    C.   The Settlement Approval Process Provides Adequate Opportunity for Class Members to Raise Objections or Comment on the Settlement................................ 11

**VII.  CONCLUSION** ................................................................................................................. 14

i

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: JT NOM AND MOT. F/PREL. APPROVAL OF CLASS SETT. AGREEMENT… MPA ISO MOTION

# TABLE OF AUTHORITIES

Cases

*Bourlas v. Davis Law Associates*, 237 F.R.D. 345 (E.D.N.Y. 2006)………………………………… 6

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)……………………………….…… 9

*Handschu v. Special Servs. Div.*, 787 F.2d 828 (2d Cir. 1986)…………………………………….… 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)……………………………………………. 5

*Hawker v. Consovoy*, 198 F.R.D. 619 (D.N.J. 2001)……………………………………………...… 12

*In re General Motors Corp Pick-Up Truck Fuel Tank Products Liability Litigation*,
    55 F.3d 768 (3rd Cr. 1995)……………………………………………………………………….. 5

*Kaplan v. Chertoff*, No. Civ. 06-5304, 2008 WL 200108, at *13
    (E.D. Pa. Jan. 24, 2008)……………………………………………………………………...… 12, 13

*Katie A. v. Bontá*, No. CV-02-05662 AHM(SHx)(C.D. Call, 2002)……………………………… 13

*Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338 (9th Cir. 1980)………………………………….. 9

*Officers for Justice v. Cyil Service Commission of the City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)…………………………………………………………………...… 6, 7, 8

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983)……………………………...12

Federal Rules

Federal Rules of Civil Procedure

    Rule 23(b)(1)…………………………………………………………………………………….. 11, 12
    Rule 23(b)(2)……………………………………………………………………………… 11, 12, 13
    Rule 23(b)(3)………………………………………………………………………………….… 11, 12
    Rule 23(c)(2)(A)…………………………………………………………………………………....… 11
    Rule 23(c)(2)(B)……………………………………………………………………………….....… 9, 11
    Rule 23(e)(1)………………………………………………………………………………………… 9, 10

State Codes

California Welfare and Institutions Code

    12301.07…………………………………………………………………………………………….. 3
    12309(e) & 12309.2………………………………………………………………………………… 2

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on April 4, 2013 at 2:00 p.m.[1] or on such date and time as may be set by the Court, Plaintiffs will move for preliminary approval of a proposed settlement reached between Plaintiffs and Defendants. This motion is based on this notice, the Memorandum of Points and Authorities and all documents and arguments submitted in support thereof, the record in this action, and whatever oral argument the Court may entertain.

**RELIEF SOUGHT:** Plaintiffs hereby request the following relief:

1. Preliminary approval of the Class Action Settlement Agreement;

2. Approval of the proposed form of Notice to the Class; and an order directing provision of Settlement Notice to the Class in accord with the Plan for Class Notice; and

3. An order setting a schedule for distribution of the Class Notice and for the Fairness Hearing.

Dated: March 28, 2013           Respectfully submitted,

By:       /s/ Melinda Bird
MELINDA BIRD
Attorneys for Named Plaintiffs and the Class

DISABILITY RIGHTS CALIFORNIA
DISABILITY RIGHTS LEGAL CENTER
LAW OFFICE OF CHARLES WOLFINGER
NATIONAL HEALTH LAW PROGRAM
NATIONAL SENIOR CITIZENS LAW CENTER

---

[1] Plaintiffs are filing herewith an *ex parte* application for an order shortening time.

1

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: JT NOM AND MOT. F/PREL. APPROVAL OF CLASS SETT. AGREEMENT… MPA ISO MOTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF SETTLEMENT

As this Court previously found, "Plaintiffs are disabled and elderly Californians who need in-home assistance, …in order to live safely at home without risk of injury or harm." Order, Dkt. No. 198 at 1. Plaintiffs brought this class action to ensure their continued access to In-Home Supportive Services ("IHSS"), without which they "will be unable to care for themselves, suffer injuries and be relegated to emergency rooms, hospitals, and other institutions." *Id*. at 2. Plaintiffs challenged two statutes, one of which would have made some recipients totally ineligible for IHSS while reducing domestic and related services for others, and one of which would have reduced IHSS hours by twenty percent (with certain very limited exceptions).

After over three years of hard-fought litigation regarding proposed cuts to the IHSS program, including temporary and preliminary injunctive relief, stay motions, and appeals, Plaintiffs and Defendants have finally reached a mutually agreeable settlement that will end this protracted case. Settlement Agreement, Attachment 1 to Declaration of Melinda Bird ("Bird Dec."). The proposed resolution, which if approved by the Court will terminate both this case and the related IHSS case *Dominguez v. Brown*, Case No. 09-02306 CW (N.D. Cal.) ("*Dominguez*"), was reached only after months of difficult discussions between the parties. The result is the product of arms-length negotiation and is, in the view of Class Counsel, in the best interests of the class.

In exchange for the repeal of the statutes at issue here, Plaintiffs have agreed to a relatively modest, and most likely temporary, reduction in hours provided to IHSS recipients. Under the settlement, the State would be permitted to reduce service hours by 8% for the period of one year, beginning July 1, 2013. This would effectively be a 4.4% reduction below current hours, given that a 3.6% reduction is currently in effect. After twelve months, the cut in hours will be reduced to 7%. Most importantly, the State has committed itself to seek additional revenues for the IHSS program that, if approved by the federal government, would be used to restore the reduction in IHSS hours. While Plaintiffs do not want to see *any* reductions in the IHSS program, the reductions permitted under the settlement pale in comparison with the potential impacts of the

1

statutes they replace and are reasonable in light of the risks of litigation.

For all of these reasons, the proposed settlement easily satisfies the minimal standards necessary for preliminary approval. The Court should grant such approval, direct that notice be provided to the Class as provided for in the Plan for Class notice, which is Exhibit C to the Settlement Agreement, and set a schedule for a fairness hearing and final settlement approval.

## II.     PROCEDURAL HISTORY

Plaintiffs filed this lawsuit on October 1, 2009 on behalf of four individual IHSS recipients representing a class of IHSS recipients and six unions that represent IHSS providers. Complaint, Dkt. No. 1. Plaintiffs asserted challenges to ABX4 4, which added California Welfare and Institutions Code §§ 12309(e) & 12309.2. Those statutes would have terminated all IHSS eligibility for 30,000 recipients and reduced IHSS hours for an additional 100,000 recipients, based on their "Functional Index" ranks and scores. Plaintiffs raised claims under, *inter alia*, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Medicaid Act, and the Due Process and Supremacy Clauses of the U.S. Constitution.

On October 23, 2009, this Court issued a Preliminary Injunction enjoining Defendants from implementing any of the challenged statutes. Order, Dkt. No. 198. Defendants appealed that Order to the Ninth Circuit Court of Appeal. While the appeal was pending, the California Legislature enacted Cal. Welf. & Inst. Code §§12309(i) and 12309.2(e) to temporarily suspend ABX4 4 until final judgment was rendered in this case (relevant provisions of ABX4 4 "shall only be implemented if a court of competent jurisdiction has issued an order, that is not subject to appeal or for which the time to appeal has expired, upholding its validity"). On the basis of these suspension statutes, the Ninth Circuit dismissed the appeal as moot and vacated the order granting a preliminary injunction.

In addition, in 2011, the California Legislature enacted Senate Bill (SB) 73, which required the California Department of Social Services ("CDSS") to "implement a 20-percent reduction in authorized hours of service" for most IHSS recipients if (as occurred) California experienced mid-

2

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: Jt NOM and Mot. f/Prel. Approval of Class Sett. Agreement… MPA ISO Motion

year revenue shortfalls. Cal. Welf. & Inst. Code § 12301.07.[2] On December 1, 2011, Plaintiffs filed an amended complaint that added challenges to implementation of SB 73, also based *inter alia*, on the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Medicaid Act, and the Due Process and Supremacy Clauses of the U.S. Constitution.  Dkt. No. 17. Plaintiffs requested an *ex parte* Application for a Temporary Restraining Order and Preliminary Injunction, which this Court granted on December 1, 2011. Dkt. No. 417. This Court subsequently issued a preliminary injunction against implementation of SB 73 on January 19, 2012 (Dkt. No. 494) and issued a written Order granting the Preliminary Injunction on March 2, 2012. Dkt. No. 506.

Plaintiffs initially filed a motion for class certification in 2009, (Dkt. No. 20), and renewed this motion on December 1, 2011.  Dkt. No. 356.  This Court certified a class on March 2, 2012 (Dkt. No. 505), with the following subclasses:

> <u>Class A</u>: All recipients of IHSS in the State of California whose IHSS services will be limited, cut, or terminated under the provisions of ABX4 4, and all applicants to IHSS in the State of California who would have been eligible for IHSS services but who are either not eligible, or are eligible for fewer services, as a result of ABX4 4.
>
> <u>Class B</u>: All recipients of IHSS in the State of California who have received or will receive notices of action that include a reduction of IHSS hours based on SB 73 or Defendants' implementation of SB 73, including future applicants for IHSS services whose notice of action will reflect reduced IHSS hours as a result of SB 73 or Defendants' implementation of SB 73.

Defendants filed timely appeals from this Court's 2012 orders. Dkt. No. 509.  While this appeal was pending, the Parties began serious discussions regarding a potential settlement agreement.  Bird Decl., ¶ 8.  At the request of the parties, the 9th Circuit ordered both appeals

---

[2] A very narrow category of IHSS recipients was exempt from the twenty-percent reduction, and another group of IHSS recipients with sufficiently high functional rank scores could have clawed their way back onto the program if they managed to file a request for Supplemental Care on a short time frame.

3

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: JT NOM AND MOT. F/PREL. APPROVAL OF CLASS SETT. AGREEMENT… MPA ISO MOTION

1  placed in the 9th Circuit mediation program on May 30, 2012. *Id.* However, settlement
2  negotiations were unsuccessful and the appeals were released from the mediation program on June
3  19, 2012. *Id.* The appeals were fully briefed and set for oral argument on March 21, 2013.
4       In late February 2013, the parties began a new round of settlement negotiations that were
5  ultimately successful. Bird Decl., ¶ 9. On March 13, the parties signed a term sheet and filed a
6  joint notice to the Ninth Circuit regarding their settlement and seeking a 120 day continuance of
7  the oral argument. *Id.,* ¶ 10. This request was granted on March 14, 2013. A settlement
8  agreement based upon the term sheet was signed yesterday. Attachment 1 to Bird Decl.

9       **III.    DESCRIPTION OF SETTLEMENT PROVISIONS**

10      The Settlement Agreement has four key features.

11      **First,** the statutes mandating the functional index cuts of 2009 and the 20% cuts in 2011
12 will be repealed. Settlement Agreement, ¶ 23, Ex. A to Settlement Agreement (proposed
13 legislation). As Defendants have stated, this repeal "creates stability and certainty to allow this
14 vulnerable population to remain active in the communities in which they live." CDSS And DHCS
15 Press Release issued March 19, 2013, Attachment 2 to Bird Declaration.

16      **Second**, instead of cuts of 20% or more, Class members will be subject to a temporary
17 reduction in hours of 8%, beginning July 1, 2013. Settlement Agreement, ¶ 12. The practical
18 effect will be a reduction of 4.4% below current hours because a cut of 3.6%, unrelated to this
19 litigation, is already in effect. This 3.6% reduction sunsets on July 1, 2013, so the 8% cut will
20 replace, and not be in addition to, the 3.6% cut. *Id.*, ¶ 14. IHSS recipients receive, on average,
21 fewer than 100 hours of assistance per month. Decl. of Eileen Carroll, Dkt. No. 446. A reduction
22 of 4.4% will thus mean a loss of approximately 4½ hours per month, or one hour per week, for the
23 average IHSS recipient.

24      This reduction will decrease to 7% after twelve months, that is, by July 1, 2014.
25 Settlement Agreement, ¶ 13. This 7% reduction will be ongoing, except that State Defendants are
26 required by the settlement agreement to seek the additional revenues described in the next
27 paragraph and to use those revenues to offset the reduction.

28      **Third**, State Defendants have agreed to pursue additional revenues for the IHSS program

4

1   in the form of an assessment on home care services, including but not limited to IHSS and home
2   health care. *Id.*, ¶¶ 18-22, 24. If that assessment is approved by the federal government, the
3   savings generated must be used to restore the 7% reduction. Agreement, ¶¶ 13, 21 and Ex. A to
4   Agreement (legislation re: process for restoring hours). Defendants have also committed to seek
5   retroactive implementation of the new assessment and if approved, to use the one-time saving for
6   the benefit of IHSS recipients. Agreement, ¶ 22.

7   **Fourth**, Defendants have agreed to clarify the process for seeking a reassessment of IHSS
8   hours so that reassessments will be easier to obtain. *Id.,* ¶ 16. Reassessment of need is available
9   for any change of circumstances, including non-medical reasons, such as the loss of alternative or
10  volunteer assistance. However, many counties have adopted a practice of refusing to grant a
11  reassessment without a doctor's note that the recipient's medical condition has changed. Bird
12  Decl., ¶ 11. Defendants agreed to issue a directive to counties reiterating that a physician's note is
13  not required, and that IHSS recipients must be informed of their right to appeal if a request for a
14  reassessment is denied. Agreement, ¶ 17. Most importantly, Defendants agreed to explain the
15  right to request reassessment and to appeal the denial of a reassessment in the notice of action that
16  will be issued regarding the 8% cut. *Id.*, ¶17.

17  The Settlement Agreement also contains release and waiver terms that represent fair
18  compromises between the parties. As part of the settlement, Class Members will waive their right
19  to file litigation challenging the 8% and 7% cuts in hours. Agreement, ¶33. However, class
20  members will retain their right to challenge any other reductions in IHSS eligibility, services,
21  hours, or wages that take place after the Settlement Agreement was signed. *Id*.

22  **IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER**
23  **FED. RULE OF CIV. PROC. 23(e)**

24  Federal Rule of Civil Procedure 23(e) requires that any proposed settlement or
25  compromise in a class action suit be approved by the court, subject to a determination that it is
26  "fair, reasonable, and adequate." The court may approve the settlement preliminarily, establishing
27  an initial presumption of fairness. *In re General Motors Corp Pick-Up Truck Fuel Tank Products*
28  *Liability Litigation* 55 F.3d 768 (3rd Cir.1995); *Hanlon v. Chrysler Corp*, .150 F.3d 1011, 1026

5

(9th Cir. 1998). Where a "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted." *Bourlas v. Davis Law Associates*, 237 F.R.D. 345 (E.D.N.Y.2006). *Id* at 355 (internal citations omitted).

The standard by which a proposed settlement is to be evaluated is whether the settlement is fundamentally fair, adequate and reasonable. FRCP 23(e); *Officers for Justice v. Civil Service Commission of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). This determination involves a balancing of factors which may include: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id*. at 625 (internal citations omitted).

### A. The Settlement is the Product of Serious, Informed, Non-collusive Negotiations Conducted by Experienced Counsel

This case has been aggressively and effectively litigated by the parties, as set forth in more detail in the Procedural History, Section II, *supra*. The parties litigated vigorously through two motions for preliminary relief, a motion to dismiss and a motion for class certification. Bird Decl., ¶ 7. Class counsel include non-profit law firms with national scope and reputation, disability rights law firms from California and experienced private counsel. *Id.,* ¶ 4. Class counsel collectively possess decades of experience in the prosecution and settlement of class actions, claims under the ADA and the Medicaid Act, and the rights of people who are elderly or disabled. *Id.* Defendants were represented by experienced attorneys general with the California Department of Justice. In addition, the Chief Counsel of DHCS and other senior lawyers with other executive agencies participated throughout the settlement negotiations. *Id.,* ¶ 9.

In February 2013, on the eve of oral argument, the parties began a new round of negotiations. In addition to numerous telephone calls and email exchanges, the parties met in person on multiple occasions and exchanged written drafts and proposals. Discussions included direct participation of high-level staff and directors from the DHCS, CDSS, the Department of Finance and other state agencies. *Id.*, ¶ 9. The result of these discussions was a term sheet signed on March 17, 2013. Based on this term sheet, counsel for the parties then negotiated the more detailed provisions and attachments to the Settlement Agreement, which was signed on March 27, 2013. *Id.* ¶ 10.

Throughout this process, virtually every element and phrase in the agreement has been extensively discussed. The parties considered alternative proposals, consulted clients and knowledgeable associates on a daily basis. *Id.* In sum, the settlement is the result of arms-length, informed and non-collusive negotiations.[3]

### B. The Settlement Fairly and Adequately Addresses the Concerns Underlying the Litigation and Provides Similar Benefits to All Similarly Situated Class Members

Determination of adequacy of a settlement includes assessment of the degree to which the primary concern of plaintiffs in filing the suit is addressed by the proposed agreement. *Officers for Justice*, 688 F.2d at 628. The Settlement addresses the concerns that were the basis of Plaintiffs' claims, providing significant relief to the Class, and disposes of all claims filed against Defendants. Plaintiffs brought this suit to challenge drastic reductions in the IHSS program, alleging that these changes would place Class Members at risk of unnecessary institutionalization and violate the ADA and Medicaid Act. The Settlement eliminates the threat of the most severe cuts, replacing this with smaller reductions that, while difficult, are incremental in magnitude and most likely temporary.

From Plaintiffs' perspective, a crucial element of the Settlement is State Defendants'

---

[3] Significantly, under the proposed settlement, both sides will bear their own fees and costs. Bird Decl., ¶ 12. This eliminates entirely an issue – the question of class counsel's remuneration – that might otherwise raise the possibility of an improperly collusive settlement.

7

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: JT NOM AND MOT. F/PREL. APPROVAL OF CLASS SETT. AGREEMENT… MPA ISO MOTION

1  obligation to pursue new revenue sources for the IHSS program through a new assessment on
2  home care services. If approved by the federal government, the savings generated by this new
3  assessment will most likely restore all cuts to the program and allay Class Members' concerns
4  regarding repeated attempts to reduce IHSS benefits to solve state budget shortfalls.

5  The proposed Settlement is also fair in that named plaintiffs and unnamed class members
6  are being treated equally. No plaintiffs – whether named plaintiffs or Class Members – will
7  receive service payments or any money damages. Consequently, in an action such as this for
8  declaratory and injunctive relief, the relief afforded to named plaintiffs is no greater than that
9  afforded to class members as a whole.

### C. The Settlement is Reasonable in Light of the Risks of Further Litigation and Other Factors

12  Significant in evaluating the reasonableness of a proposed settlement are the risks at trial
13  for both sides, the costs of continuing the litigation, and the delay and/or preclusion in achieving
14  the favorable results for Class Members that continued litigation, including appeals, would entail.
15  *Officers for Justice*, 688 F.2d at 625. On appeal, Defendants had raised difficult issues regarding
16  standing, ripeness and the 10th Amendment. Had the Court of Appeals concluded that these
17  required a reversal of this Court's preliminary injunction against the 20% cut in IHSS hours,
18  Class Members would have faced devastating reductions and chaotic attempts to navigate through
19  the challenging process for obtaining Supplemental hours under SB 73.

20  As to the Functional Index cuts mandated by ABX4 4, the remand of the state's appeal also
21  posed definite risks to the Class Members. Plaintiffs faced the prospect of extensive discovery
22  directed in part at the circumstances of fragile class representatives and the possibility of a lengthy
23  trial. An adverse decision from the 9th Circuit regarding the appeal of the 20% cuts, depending on
24  the breadth and basis, could potentially have disposed of Plaintiffs' claims regarding ABX4 4 as
25  well. This left open the possibility that both the functional index cuts and the 20% reduction could
26  have been implemented at the same time, resulting in cuts of 50% or more in recipient hours. The
27  settlement completely removes these threats to the health and well-being of class members, and
28  holds the promise for full restoration of all hourly reductions. Consequently, the Settlement is

8

1  reasonable in light of the magnitude of the risk and the potential consequences for Class members
2  from continued litigation.

3      **V.    THE PROPOSED CLASS NOTICE AND PROCEDURE FOR APPROVAL**
4      **ARE APPROPRIATE UNDER FED. RULE OF CIV. PROC. 23(e)(1).**

5      **A.    The Proposed Class Notice and Settlement Materials Provides**
6      **Appropriate Information to Class Members in Easily Understandable**
7      **Language.**

8  Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that prior to final approval
9  of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members
10 who would be bound by the proposal." Generally, notices to class members must be "clearly and
11 concisely state[d] in plain, easily understood language." Rule 23(c)(2)(B). "Notice is satisfactory
12 if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse
13 viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*,
14 361 F.3d 566, 575 (9th Cir. 2004) (*quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338,
15 1352 (9th Cir. 1980)).

16 The proposed combined class notice for the *Oster* and *Dominguez* classes accomplishes
17 this. *See* Ex. C-1 to Settlement Agreement. The notice provides a brief description of the case and
18 settlement, and a description of the classes in *Oster* and *Dominguez*. The headings are in bold and
19 plainly describe the different topics covered by the notice. The notice explains how Class
20 Members can obtain a list of Class counsel and a copy of the Settlement Agreement, including a
21 listing of websites on which this information is posted. It provides a toll-free phone number, a
22 P.O. Box and an email for Class Members to contact Class counsel to ask questions or obtain
23 additional information. Finally, the notice also explains how Class Members can exercise their
24 right to object, the deadline for objections and the date, time, and location of the fairness hearing.
25 Moreover, the proposed Class Notice provides this information while remaining with reasonable
26 parameters for readability. As measured by the most commonly-used readability scale, the Flesch-
27 Kincaid grade-level scale, the readability rating for the class notice is 6.2, which is the first quarter
28 of sixth grade. Bird Decl. ¶17.

9

*Oster, et al. v. Lightbourne,* Case No. CV 09-04668 CW: JT NOM AND MOT. F/PREL. APPROVAL
OF CLASS SETT. AGREEMENT… MPA ISO MOTION

1    In addition, the Class Notice will be translated into the 13 Medi-Cal threshold languages.
2 Notice Plan, Ex. C-3 to Settlement Agreement. For individuals who need accommodations due to
3 their disabilities, Class counsel will provide the Notice in alternative formats, such as electronic
4 versions, tapes and large print. *Id.*

5    **B.    The Process for Distribution of Class Notice is Reasonably Calculated**
6         **to Reach Class Members.**

7    Rule 23(e) provides that, if a court grants preliminary approval, "[t]he court must direct
8 notice in a reasonable manner to all class members who would be bound by the proposal. Fed. R.
9 Civ. P. 23(e)(1). The parties have developed a Plan for Class Notice for both the Oster and
10 Dominguez classes. Ex. C-3 to Settlement Agreement. The Plan for Notice has three
11 components.

12    First, the three-page class notice will be posted to a number of public and non-profit
13 websites that will serve as "portals" to distribute information to IHSS recipients and the larger
14 disability and senior community of which they are a part. Ex. C-3 to Settlement Agreement.
15 Specifically, within 24 hours of Court approval of the form of the notice, CDSS, DHCS and
16 Disability Rights California will post the Class Notice and on their respective websites.
17 Disability Rights California alone receives more than 300,000 "hits" to its website per year, so this
18 alone will ensure broad distribution. Bird Decl., ¶ 21. Other class counsel and a number of union
19 plaintiffs will also post the settlement materials on their respective websites.

20    Second, the settlement materials include a one page flyer or poster suitable for display in a
21 waiting room or other public area. Ex. C-2 to Settlement Agreement. Defendant CDSS will
22 request that county welfare departments and other county agencies as well as state hearing division
23 offices post this flyer in their public areas and make the class notice and Settlement agreement
24 available upon request. Ex. C-3 to Settlement Agreement. DHCS will send a "fax-blast" with the
25 flyer and settlement materials to all Community Based Adult Services ("CBAS") centers, with a
26 similar request to post the flyer in their common areas. *Id.*

27    Third, the parties have developed an extensive outreach and notice campaign designed to
28 reach virtually every organization involved with elderly and disabled individuals. Through a

1  combination of email distributions, public speaking and presentations, tele-town halls and other
2  means of communication, the parties will enlist more than 25 state and non-profit organizations in
3  distributing the settlement materials.  In fact, Class counsel have already begun these outreach
4  presentations and have received advance commitments from several groups to assist with this
5  notice plan.  Bird Decl., ¶ 23.

6  In addition to these three means of providing notice, the coordination of the settlements in
7  both *Oster* and *Dominguez* provides an additional avenue for reaching class members.  As set
8  forth in the Declaration of Stacey Leyton in Support of Preliminary Approval of Class Settlement
9  in the *Dominguez* case, the labor unions that are organizational plaintiffs in *Dominguez* and *Oster*
10 are preparing for even more robust measures for informing their members about the combined
11 settlement through outreach and mailings which will supplement the plan for notice described
12 above.  Most of these members are related to the IHSS recipients for whom they provide services,
13 and those who are not related often enjoy close relationships with recipients, and can facilitate
14 communication regarding the class settlement.

15 **C.    Individual Mailed Notice Should Not be Required.**

16 In light of the robust notice scheme described above and given that this case involves a
17 Rule 23(b)(2) class, individualized notice of the proposed settlement to all class members should
18 not be required.  Moreover, any negligible benefit gained by providing such notice would be
19 outweighed by the cost and delay that would be incurred.

20 For Rule 23(b)(3) classes, the Rules specifically require individualized notice "to all
21 members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  This
22 individualized notice is necessary so that class members can exercise their right to opt out.  In
23 contrast, for (b)(1) and (b)(2) classes, as to which there is no right to opt out, Rule 23 provides
24 only that "the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  The
25 reason for the different treatment
26     derives from the nature of the relief sought in these actions. Rule 23(b)(1) and
27     (b)(2) classes are cohesive in nature. Because of this cohesiveness, an adequate
28     class representative can, as a matter of due process, bind all absent class members

11

1       by a judgment. . . . Rule 23(b)(3) classes are less cohesive, and must abide by

2       more stringent due process constraints.

3 *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 963 & n.1 (3d Cir. 1983) (citations

4 omitted).

5       Accordingly, "the form of notice of settlement of a Rule 23(b)(1) or (b)(2) class action

6 need only be such as *to bring the proposed settlement to the attention of representative class*

7 *members who may alert the court to inadequacies in representation, or conflicts in interest among*

8 *subclasses*, which might bear upon the fairness of the settlement." *Id.* at 963 (emphasis added);

9 *see also Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("Because of the

10 common interests of all its members, a Rule 23(b)(2) class seeking declaratory and injunctive

11 relief is cohesive by nature, and *notice to a representative class membership may be considered*

12 *sufficient*." (emphasis added; citation omitted)).

13       Courts have thus approved notice of proposed settlements in (b)(1) and (b)(2) cases by

14 means of "publication over a period of weeks in several metropolitan New York newspapers"

15 (*Handschu*, 787 F.2d at 833) and publication in two newspapers and posting in prisons in which

16 potential class members were incarcerated. *Hawker v. Consovoy*, 198 F.R.D. 619, 621 & n.5

17 (D.N.J. 2001).

18       In cases involving public benefits recipients such as this, notice is typically provided by

19 posting on appropriate government websites and dissemination through a community-based and

20 non-profit organizations which work with potential class members. Bird Decl, ¶¶ 26-28

21 (discussing cases). Following the settlement of *Martinez v. Astrue*, a class action lawsuit against

22 the Social Security Administration ("SSA"), this Court approved a plan for class notice that

23 involved extensive outreach to community and public interest advocates as well as posting on

24 SSA's website, the websites of class counsel and on the websites of many other agencies that

25 assist SSA recipients. Bird Decl., ¶ 27. A similar plan was approved in *Kaplan v. Chertoff*, No.

26 Civ. 06-5304, 2008 WL 200108, at *13 (E.D. Pa. Jan. 24, 2008) (class of SSI recipients adversely

27 affected by immigration processing backlogs). In another California class action involving Medi-

28 Cal recipients, a federal court approved a notice plan that required CDSS and DHCS – which are

1    also defendants here - to post the class notice on their website, distribute it to county social
2    services offices, and provide the notice to non-profit agencies that worked with class members.
3    Bird Decl. ¶ 26 (discussing notice in 2011 settlement in *Katie A. v. Bontá*, No. CV-02-05662
4    AHM (SHx)(C.D. Cal., 2002)).
5         The proposed notice plan here, like the plans approved in the above cases, is designed to
6    reach a substantial number of class members and will amply ensure awareness of the settlement by
7    "representative class members" who will be able to inform the Court of any perceived deficiencies
8    in the settlement—the very purpose of notice in a (b)(2) case.
9         Not only is individualized notice not required, it would be unnecessarily burdensome in
10   this case. First, the cost of providing individualized notice to the hundreds of thousands of class
11   members would be substantial. Bird Decl., ¶ 25. Defendants have consistently claimed severe
12   financial hardship in this case, and the parties agree that the State's limited resources would be
13   better spent elsewhere (for example, for IHSS recipients). Second, individualized notice would
14   delay the settlement approval process. State Defendants have informed Plaintiffs that it would
15   take approximately thirty days to send out individualized notices. *Id.* In contrast, the proposed
16   notice plan would post notice the day after preliminary approval is granted. Because
17   implementation of the proposed settlement must be coordinated with the rapidly-approaching
18   timelines of the State's budget process, and the July 1 deadline for implementation of the 8% cut
19   provided for in the Settlement Agreement, this thirty-day delay in the settlement approval process
20   could impede the settlement. Therefore, the cost and delay involved in providing individualized
21   notice weigh strongly in favor of the proposed notice plan. *See Kaplan*, 2008 WL 200108, at *13
22   (approving notice plan without individualized notice in part because the delay required by
23   individualized notice would be contrary to "the time-sensitive nature of this case").
24        In sum, individualized notice of the proposed settlement to all class members should not be
25   required.
26        **D.    The Settlement Approval Process Provides Adequate Opportunity for
27             Class Members to Raise Objections or Comment on the Settlement.**
28        The Class Notice describes the process for raising objections and provides the addresses to

13

which objections must be mailed. There is a prominent heading in bold that calls the reader's attention to the objection process. The objection procedure itself is simple: class members may mail written objections to the attorney general and to Class counsel at the P.O. box listed on the notice. Class Members will have four weeks to respond to the proposed notice, pursuant to the following proposed schedule, agreed to by the parties and attached as Exhibit B to the Settlement Agreement:

| | |
|---|---|
| **April 4, 2013:** | Hearing re Preliminary Approval of Settlement and Class Certification. (2:00 p.m.) |
| **April 5, 2013** | Notice to be mailed to Class Members |
| **May 3, 2013:** | Last day for Class Members to mail objections to settlement agreement (Four weeks). |
| **May 10, 2013:** | Parties to file Summary of Objections and Responses with the Court. |
| **May 23, 2013:** | Fairness Hearing (2:00 p.m.) |

## VI. CONCLUSION

For the reasons discussed above, Plaintiffs request that the Court: 1) Issue Preliminary Approval of the Class-Action Settlement; 2) approve the proposed Notice of Proposed Settlement and the process for distribution of the Notice; 3) establish a schedule for distribution of the Notice, handling of objections, and related filings; and 4) set a date and time for the Fairness Hearing.

Dated: March 28, 2013                    Respectfully Submitted,

By: /s/ *Melinda Bird*
MELINDA BIRD (SBN 102236)
MARILYN HOLLE (SBN 61530)
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
melinda.bird@disabilityrightsca.org
marilyn.holle@disabilityrightsca.org

SUJATHA JAGADEESH BRANCH (SBN 166259)
DISABILITY RIGHTS CALIFORNIA
SACRAMENTO REGIONAL OFFICE
1831 K Street
Sacramento, CA 95811
Telephone: (916) 504-5800

Facsimile: (916) 504-5801
sujatha.branch@disabilityrightsca.org

DARA L. SCHUR (SBN 98638)
FREDERICK P. NISEN (184089)
JUNG PHAM (SBN 251232)
DISABILITY RIGHTS CALIFORNIA
BAY AREA REGIONAL OFFICE
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201
dara.schur@disabilityrightsca.org

ANN E. MENASCHE (SBN 74774)
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA 92101
Telephone: 619-239-7861
Facsimile: 619-239-7906
ann.menasche@disabilityrightsca.org

PAULA PEARLMAN (SBN 109038)
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-1031
Facsimile: (213) 736-1428
paula.pearlman@lls.edu

CHARLES WOLFINGER (SBN 63467)
LAW OFFICE OF CHARLES WOLFINGER
4655 Cass Street # 314
San Diego, CA 92109
Telephone: (858) 272-8115
Facsimile: (858) 270-3960
Cw@charleswolfinger.com

JANE PERKINS (SBN 104784)
NATIONAL HEALTH LAW PROGRAM
101 East Weaver Street, Suite G-7
Carrboro, NC 27510
Telephone: (919) 968-6308
Facsimile: (919) 968-8855
perkins@healthlaw.org

ABIGAIL K. COURSOLLE (SBN 266646)
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Blvd., Ste. 750
Los Angeles, CA 90010
Telephone: (310) 736-1652
Facsimile: (213) 368-0774
coursolle@healthlaw.org

*Attorneys for Individual Named Plaintiffs David Oster, Willie Beatrice Sheppard, C.R., Dottie Jones, Andrea Hylton, Helen Polly Stern, Charles Thurman, L.C., and the Plaintiff Class*

15